CHAPMAN & DEWEY LAND COMPANY *v.* WOODRUFF.

Opinion delivered January 4, 1915.

1. MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO WARN OF DANGER—CUSTOM OR AGREEMENT—QUESTION FOR JURY.—Plaintiff, an employee of defendant was engaged in notching trees to be cut down by other employees. He notched the trees on the side in which they were expected to fall, and was injured by the falling of a tree which had been sawed down by other employees. *Held,* if it was the custom of the sawyers to warn plaintiff, who was notching the trees, at the time a tree was ready to fall after being sawed, or if they agreed to do so, and in either event failed to give warning in time for plaintiff to have avoided the danger, the failure would constitute negligence for which the master would be liable, and whether the custom or agreement to give the warning existed, was a question for the jury.

2. PLEADINGS—ANSWER—PERSONAL INJURY ACTION—RIGHT TO AMEND—QUESTION OF FACT.—In an action against a corporation for damages due to personal injuries, the defendant filed an answer admitting that plaintiff was in its employ when injured. *Held,* it was not proper for defendant thereafter to seek to amend its answer, denying that plaintiff was in its employ when he was injured. It was defendant's duty to know when the action was brought whether plaintiff was in its employ, and it can not so amend in the absence of a showing that all the facts were not known to it at the time of making its original answer.

Appeal from Craighead Circuit Court, Jonesboro District; *J. F. Gautney,* Judge; affirmed.

STATEMENT BY THE COURT.

This is a suit for damages for personal injuries alleged to have been received by appellee on account of the negligence of some other servants of appellant company, with whom he was working in felling trees. Appellee notched the trees with an axe on the side in the direction the tree was expected to fall, and Lynne and Harbison were cutting the trees down with a cross-cut saw. They stood or knelt with their backs toward the notch and sawed from the opposite side. Appellee had notched this tree, which was twelve or fourteen inches in diameter and had gone on to another and cleaned the vines away from it, preparatory to notching it. The others sawed this tree through and it fell, making very little noise, and

struck the appellee who was near the other tree, injuring him severely, no warning having been given by the saw-yers that the tree was about to fall. He was knocked down, his right leg broken below the hip, his shoulder sprained and a deep gash cut in his head and received other minor bruises and cuts. He was confined to his bed about eight weeks, suffering great pain and the crip-pled leg is now about an inch shorter than the other.

He alleges that it was the custom of the sawyers, and that they had agreed to warn him by hallooing "timber" or "look out," when the tree was sawed through and ready to fall, that defendant negligently failed to give him any warning on account of which he suffered the injury.

The answer admitted that appellee was employed by the appellant company and engaged in the felling of trees, it being his duty to notch them ahead of the saw-yers; alleged that he was an experienced man, knew that the tree would fall in the direction that it was notched; that he had notched this tree, which was a small one, im-mediately before it was sawed down; knew the size and height of it and the direction it would fall, and it was his duty to protect himself from harm against the falling of it; that he assumed the risk of any danger therefrom and was guilty of contributory negligence in standing within the reach of it.

The injury occurred on January 21, 1911, and on February 10, 1914, appellant filed an amended answer containing the allegations of the original answer except that it denied that the appellee was employed by it at the time he was injured. This amended answer was stricken out upon the motion of the appellee, alleging that the com-plaint was filed on December 14, 1911, and the answer at the following term, that the complaint alleged that at the time of the injury appellee was in the employ of the defendant which allegation was admitted by the answer, and that the amended answer denied that appellee was in its employ, without stating by whom he was employed. The motion to strike, further alleged that if he was not employed by the Chapman & Dewey Land Company, ap-

pellant, he was employed by the Chapman & Dewey Lumber Company; that both corporations are owned by the same stockholders and had the same officers, the lumber company being engaged in the manufacture of lumber cut from the land owned by the land company, the title to the real estate being held by the land company and the timber manufactured by the lumber company, merely as a convenience. That appellee had been employed about a month prior to his injuries, his wages had been paid in cash, that he did not know by which of these companies he was employed, and that prior to the institution of the suit, the attorney for the land and lumber company informed his attorney that the land company, appellant, was his employer, and the proper defendant to the suit. That he relied upon this information and the admission of his employer in the answer, and had no intimation to the contrary until the filing of the amended answer of February 10, 1914, and that the statute of limitations had run in favor of the lumber company.

An affidavit of the manager of the lumber company, explaining the conditions under which the lands were held and the timber cut was filed with the amended answer, which stated also that the stockholders and the general officers of the two corporations were practically the same. The amended answer was stricken from the files over appellant's objection. Judgment was recovered against appellant company, a motion for a new trial was filed and as an amendment thereto an offer in writing of the Chapman & Dewey Lumber Company to stipulate with appellee that in the event that a new trial was granted herein and suit begun against it, it would not plead the statute of limitations against plaintiff's cause of action.

It appears from the testimony that appellee was twenty-four years old at the time of the injury, was engaged in cutting underbrush and notching trees with an axe to be sawed by Lynne and Harbison. He chopped a notch on one side of the tree, the way it was expected to fall, and it was sawed through from the other side, falling across the notch. That he knew when the tree was going to fall by Lynne and Harbison hallooing "timber"

or "look out," and that he would then get out of the way of the falling tree after being so warned. He stated, "I had no way of knowing when a tree was going to fall, except the signal, unless I would be watching; sometimes I would be behind a tree top from where they were working, and could not see the tree. I first learned that notice would be given when a tree was about to fall, from Lynne and Harbison; they said they would halloo; that was when I first began to work there, and they hallooed always. After I was hurt, Mr. Lynne came to my house while I was in bed, and told me the reason why they didn't halloo that time, was that they just neglected to do it, it being about quitting time."

Harbison testified that he was working with Lynne and Woodruff, appellee, sawing trees with a cross-cut saw; that Woodruff was cutting down the small brush and notching trees ahead of them. The brush was small, there was little to do, and they were sawing the trees down just about as fast as Woodruff could notch them, and "we had always been in the habit of notifying the boy when we had cut the trees so that they were ready to fall, but we failed to notify him in time to save him when this tree fell; when the tree started to fall, we just stepped back and looked around and saw the boy, and it was too late to save him then. The tree was right on him when we hallooed at him; we had been in the habit of notifying him when the trees were ready to fall and had done this every day. Woodruff was about forty-five feet from the tree, which was twelve or fourteen inches in diameter, and we did not halloo at him sooner because it was near quitting time, and we were tired and just neglected to notify him; both Lynne and myself told him at different times that we would halloo at him when the tree was going to fall; he did not know what tree was going to fall. The tree made very little noise when it started to fall; it did not pop, didn't crack any, and we would not have known it was falling if we had not been looking at it."

Lynne testified that he had never hallooed "timber" to the appellee when a tree was about to fall, nor had he ever promised to do so, and said it was appellee's busi-

ness to know the way the tree was going to fall, that as they began sawing it, he said to appellee, "You know which way it is going to fall; look out for yourself;" we sawed the tree, it started to fall and I took my axe and walked out of the way; Harbison had the saw and he said, "Why don't you get out of the way there before that tree will catch you?" I looked around and the tree was twelve or fourteen feet from him, and I said, "Why don't you get out of the way?" Neither Harbison nor I knew where appellee was at the time the tree fell; I didn't know which way he went, didn't know whether he was standing at the side of us, or had walked off. I said, "You can look out for yourself; you know which way the tree is going to fall." The tree was pretty nearly straight.

On cross examination he stated that he had told appellee to look out because he was standing in the way of the falling tree, and further: Q. Had you ever told him before that to look out? A. Oh, I told him several different times. Q. Well, have you done that when a tree began to fall, or when you commenced to saw a tree, or both? A. Well, I can't hardly answer that; when we would start to sawing, I would look up and see which way the tree would fall, and say, "Boys, you must look out for this tree."

The man Harbison who was sawing with me was careless, too. I don't think I hallooed "timber" at any time. I would always halloo "look out." I hallooed several different times. When I went to cut a tree, I would see where they were at. If they were out of the way, I would say nothing, and if they were in the way just before it got ready to fall, I would halloo, "Look out." Yes, I hallooed "Look out," but I never hallooed "timber."

I went to see Woodruff after he got hurt, but don't remember saying to him that he got hurt because we neglected to halloo "look out" as we ought to have done. I don't remember saying that, and I don't think I did it.

Another witness testified that Woodruff, after he was hurt, in a conversation at his home, told him that he notched a tree and walked off, and was not noticing which

way it was going to fall, and that it was through his own carelessness that he was not looking, that he made no complaint at the time about any one not giving him notice or warning about the tree going to fall. This witness was a payroll clerk of appellant company. The appellee and his mother both denied that any such conversation occurred.

The court instructed the jury, refusing appellee's requests numbered 3 and 4, as follows:

"3. The undisputed evidence shows that Woodruff participated in so cutting the tree by notching it that it would fall in the particular direction it did fall, and that he knew it would fall at or about the place it did fall. No notice of fact thus known to all of them was necessary. There was no duty, therefore, resting upon the sawyers to give notice or warning to Woodruff that the tree would soon fall, and failure to give such warning would not justify you in finding that they were negligent, unless they agreed to do so."

"4. Even if the sawyers knew the plaintiff was or had been standing where the falling tree would or might strike him they were entitled to assume that he would remove himself in time to avoid injury. They owed him no duty to warn him away and the failure, if any, to give such warning did not amount to negligence, unless they had agreed to do so, and had time to give the warning."

From the judgment appellant prosecutes this appeal.

*Hughes & Hughes* and *Hawthorne & Hawthorne,* for appellant.

1. The issue in this case was as to whether or not there was a promise made to warn the appellee when the tree was about to fall, and the instructions should have been confined to that issue. 87 Ark. 243; 90 Ark. 104; 80 Ark. 438; *Id.* 454; 82 Ark. 499; 88 Ark. 292; 76 Ark. 277.

2. Independent of some promise on the part of Harbison and Lynne to notify the plaintiff when the tree was about to fall, there was no duty on the defendant to warn him of danger. It was obvious, and he assumed it. 56 Ark. 271; 3 Labatt, M. & S. (2 ed.), §§ 1113-1165; 2 L.

R. A. (N. S.) 840; 82 Pac. 1037; 13 N. W. 513; 133 Ala. 580; 31 So. 848; 41 N. E. 289; 167 Mass. 23; 44 N. E. 1055; 96 Ark. 500.

3. The court abused its discretion in refusing to permit the amended answer of appellant to be filed denying that it was the employer of the appellee, and in excluding testimony offered to prove that it was not his employer.

*N. F. Lamb,* for appellee.

1. Appellee's right to recover does not depend upon any agreement between himself and Lynne and Harbison. There is no evidence in the record that there was any agreement between these sawyers and appellant that they would warn him; but that there was a custom or habit on the part of the sawyers to warn him when a tree was about to fall is made clear by the evidence.

2. It was the duty of Lynne and Harbison to warn appellee when a tree was about to fall. A rule may be established by custom and become as certain and its observance as obligatory, when based upon uniform custom and habit, as if written or printed. The foreman in charge of the work was present practically all of the time, and actually assisting in the work part of the time. By reason of the uniformity of this custom to warn, and his almost continuous presence, it is certain that the foreman, and, through him, the master knew of the observance of the custom. This established the rule and the master became bound by it. 81 Ark. 591; 77 Ark. 290; 84 Ark. 383; 89 S. W. 29; 78 N. W. 190; Labatt, M. & S., § 213A; 25 Pac. 358.

3. The court did not err in striking appellant's amended answer from the files. 104 Ark. 276; 1 Enc. Pl. & Pr. 449; 31 Cyc. 422.

KIRBY, J., (after stating the facts). It is contended that the court erred in refusing said requested instructions and striking from the files the amended answer. Appellee relied upon the failure to observe the custom or practice and the agreement alleged to exist between him and his co-workers in the felling of the trees, to warn him,

that the tree being sawed was about to fall, in time for him to get out of its way as negligence authorizing him to recover for the injury, and in support of this adduced testimony tending to show that there was an agreement between them to this effect, and that it was the custom to give him the warning in accordance with the agreement. The proposed instructions told the jury that unless there was such an agreement on the part of his co-employees to warn him that the tree being sawed was about to fall, that there was no duty resting upon the sawyers to give him such notice and consequently no negligence authorizing a recovery from appellant for the injury to appellee. If there was no negligence chargeable to appellant company, there of course could be no recovery of damages from it by appellee for his injury. The negligence, carelessness or omission of duty of the other servants of appellant corporation, engaged in the work of cutting the timber with him was the negligence of the corporation, the appellee being in the exercise of due care at the time of the injury, under our statute. Section 1, Act 69, Acts 1907.

Appellee and the sawyers were engaged in cutting the timber, appellee notching the trees ahead of them, and but for their custom of notifying him or their agreement to do so, that the tree they were sawing was about to fall, that he might avoid the danger from it, owed him no duty to give such warning unless they discovered him in a position of peril in time to have given him the warning and enabled him to escape it. But for such agreement or custom he would have been expected to make his own place of work safe and avoid injury while performing it and would doubtless have done so.

It may be that the instructions given by the court upon appellee's request did not clearly and definitely submit this question to the jury, since no duty arose upon the part of the sawyers, or either of them, to notify appellee when the tree was about to fall, but for the custom of doing so or the agreement to do so, until after they discovered him to be in a position of peril. It is not questioned that they did not discover his perilous position until it was too late to save him from being struck by the

falling tree after the warning was given. It was given after such discovery, but not in time for him to avoid the danger.

(1) Said instructions asked by appellee were not correct statements of the law, however, and the court did not err in refusing to give them. If it was the custom of the sawyers to warn appellee who was notching the trees, at the time they were ready to fall after being sawed, or if they had agreed to do so, and in either event failed to give the warning, in time for him to avoid the danger, as the evidence tended to show, the failure would constitute negligence for which the master would be liable.

The instructions refused tell the jury that there was no duty resting upon the sawyers to give notice or warning to Woodruff that the tree would soon fall, and that a failure to give such warning did not amount to negligence and would not justify a finding in his favor, unless they had agreed to give the warning and failed to do so, leaving out of consideration the question of whether it was customary to give such warning.

(2) The court did not err in striking the amended answer from the files, denying that the appellee was its servant at the time of the injury, while its first answer admitted the fact of his employment. It would have changed entirely the issue, and it did not attempt to disclose which corporation was appellee's employer in the service in which he was engaged, nor was it proposed to be made until after a claim for damages against the other company which had not been sued, was barred by the statute of limitations if pleaded. Appellant knew, or should have known, at the time the suit was brought, whether or not appellee was in its employ, and no showing was made that all the facts relative thereto were not as well known to it at the time of making its original answer, as when the amended answer was filed. There was no abuse of discretion in striking it from the files. *American Bonding Co.* v. *Morris,* 104 Ark. 276.

Finding no prejudicial error in the record, the judgment is affirmed.