CADDO RIVER LUMBER CO. *v.* GROVER.

Opinion delivered December 18, 1916.

1.  MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT.—In an action against a foreign corporation for personal injuries, resulting from the negligence of a fellow-servant, Act 69, Acts 1907, giving a right of action against an employer for the negligence of other employees, is applicable.

2.  TRIAL—IMPROPER ARGUMENT—PROVOCATION.—Improper argument by appellee's counsel will not be held to be prejudicial when made in answer to a personal attack upon him by appellant's counsel, in argument.

Appeal from Pike Circuit Court, *Jefferson T. Cowling,* Judge; affirmed.

*J. C. Pinnix* and *McRae & Tompkins,* for appellant.

1.  Ashcraft was not negligent. 99 Ark. 537; 104 *Id.* 67; 116 *Id.* 196.

2.  The risk was an ordinary one and was assumed by appellee. 90 Ark. 543-5-6, etc.

3.  The court erred in giving instruction No. 1 for appellee. It told the jury that it was the duty of appellant to *protect* the appellee from danger. 86 Pac. 1005; Labatt on Mast. & S., § 1165. Grover was not ignorant of the risk. It is also erroneous because it contradicts the instruction on the measure of damages. 99 Ark. 377.

4.  The court erred in refusing to reprove counsel for making improper remarks to the jury in his closing argument. 82 Ark. 432-440; 75 *Id.* 430-434.

5.  The court erred in refusing to give instruction No. 1 asked by appellant. The evidence failed to show any negligence. Appellant is a foreign corporation and the Act of 1907 abolishing the common law fellow-servant doctrine violates the 14th amendment to the Constitution of the U. S. 87 Ark. 587; 89 *Id.* 522; 222 U. S. 251-5-6; 127 *Id.* 205; 173 *Id.* 404; 169 *Id.* 393; 183 *Id.* 79; 113 *Id.* 709; 58 Ark. 435; 81 Miss. 507; 62 Am. St. Rep. 181; 178 Fed. 619; 47 L. R. A. (N. S. ) 97, 84.

*Pace, Seawel & Davis,* for appellee.

1.   The evidence is sufficient to sustain the verdict. 90 Ark. 131; 74 *Id.* 16; 87 *Id.* 614; 100 *Id.* 629.   Ashcraft was guilty of negligence and the jury so found. Attention is called to 229 Fed. 956, a case where the facts are peculiarly like this case.   As to the effect of a special verdict the general rule is to permit both verdicts to stand, if not inconsistent.   84 Ark. 359; 50 *Id.* 314; 16 U. S. Sup. Ct. Adv. Op. 686.

2.   The instructions were correct and have been repeatedly approved by this court.   The fellow-servant doctrine has been abolished.   89 Ark. 522; 85 Ark. 503; 111 *Id.* 501.   The question of contributory negligence and assumption of risk was clearly submitted by instructions Nos. 6 and 1  given by the court.   229 U. S. 114; 7 U. S. Sup. Ct. Adv. Op. 249.

3.   The fellow-servant statute is constitutional. 87 Ark. 587; 89 *Id.* 522.   The charter of a foreign corporation can be amended by legislation.   54 Ark 101; 69 *Id.* 521; 82 *Id.* 309; 95 *Id.* 588.   Judge Sanborn's decision is not in harmony with the decisions of the Supreme Court of U. S.   218 U. S. 36.

4.   The court did not commit an error in  refusing to reprove counsel for alleged improper remarks.   The remarks were legitimate and made in reply to an impassioned effort on the part of counsel for appellant. 112 Ark. 464;  104 *Id.* 528;  93 *Id.* 66.

SMITH, J.   Appellee recovered judgment for a large sum of money to compensate a personal injury sustained by him while employed by appellant.   No serious complaint, however, is made against the size of the judgment, but it is insisted that no judgment should have been permitted for the reasons which are herein discussed.

Only appellee and a man named Ashcraft were present at the time of the injury, and they differ in some material respects in their versions of this occurrence. These differences, however, have been resolved in appellee's favor by the verdict of the jury, and we may

state the facts as he related them to the jury.   He and Ashcraft were seeking to remedy some trouble with the crank-shaft of appellant's light engine.   About a week before the accident appellee had taken this crank-shaft to Glenwood, and had brought it back and had it fitted to its place in the engine.   It became loose again, and a new crank-shaft was ordered, and when it came it was found not to fit its bearings.   It was necessary to take out the Babbitt metal in the bearings, and re-Babbitt them, and appellee was directed to assist Ashcraft in doing this work, and he described the manner of his injury as follows: "We started to work on it at 7 o'clock, got the engine torn down, got the crank torn down, and we started on the Babbitt metal to chipping it out.   We worked on it until about 12 or 1 o'clock, pretty close around there, when I received the accident.   Just before 12 o'clock I went to the machine shop to look up a Babbitt ladle and also a small bellows which I knew was out there, and was going to use it in blowing out this fine dust out of the anchor hole in one of the bearings. I had already got one of these bearings cleaned out, the left-hand bearing, and when I came back in John says to me: 'We are getting along slow; it would be a good plan for you to go ahead and work on this bearing here and let me finish chipping this out over here.'   So I picked up the lantern setting on top of the engine.   I was holding my lantern above my head and had a small end punch which I was using in cleaning out the anchor hole that was required to hold the Babbitt metal in the bearings.   These holes are about half an inch apart, drilled into the casting to give this metal a hold so it will set there and let the shaft turn free in the metal. Now, I was standing there holding this light and cleaning out this fine dust out of these holes. * * * I was cleaning out these anchor holes with a small end punch and holding the lantern in my left hand above my head. I had my back to John Ashcraft who was working on the right-hand bearing behind me.   I had been working there, I judge, fifteen minutes, when Ashcraft spoke to me.   He says, 'Grover, hold the light around,' he says,

'a little closer so I can look at what I am doing.' I turned around with the light, thinking he wanted to get his bearings and see what he was doing. I never dreamed he was going to chip at that time. I turned square around and just as I turned around and threw the light over where he was working he struck the chisel with the hammer and a piece of Babbitt metal flew in my eyes."

He further testified that at the time the blow was struck the chisel was in a slanting position which made it more probable that the metal would fly in his direction and that the chisel would not have been in this position had time been given to adjust it.

Special interrogatories were submitted to the jury, to which the following answers were made:

"1.   Was Ashcraft negligent, and if so, in what did his negligence consist?

Answer: Yes, when Ashcraft called Grover's attention and struck the chisel with the hammer unexpectedly.

2.   Was Grover negligent, and if so, in what did his negligence consist?

Answer: No, he was not."

It is first insisted that Ashcraft was not negligent, but the jury, in answer to the interrogatories, has specially found that he was negligent in striking the chisel an unexpected blow, and we cannot say the evidence is not sufficient to support this finding.

(1)  It is next insisted that the risk was an ordinary one and was assumed by appellee.  But such is not the case.  The servant is relieved of the assumption of this risk under Act 69, Acts of 1907, p. 162, entitled "An Act to give a right of action against an employer for injuries or death resulting to his agents, employees or servants either from the employer's negligence or from the negligence of some of his other employees, servants or agents, and to repeal all Acts and parts of Acts in conflict herewith."

Objection is made to the first instruction given at appellee's request upon the ground that it imposed a

degree of care beyond the requirements of the law, in that it told the jury that it was appellant's duty "to exercise ordinary care to protect plaintiff from danger," and that the instruction was inapplicable under the issues joined. This instruction was a lengthy one and announced familiar principles of the law of master and servant, and told the jury that if the Act of "said John Ashcraft caused plaintiff to look in his direction and without notice or warning to plaintiff, after causing plaintiff to look in his direction, cut said Babbitt metal with his chisel, causing a piece of said metal to chip off and fly into the eye of the plaintiff, destroying the sight of the same, and that the said John Ashcraft in thus striking said metal and causing a piece of the same to fly into the eye of the plaintiff at the time failed to exercise ordinary care to protect plaintiff from danger, and that his act in thus cutting the metal was negligence and the proximate cause of the injury, and that the plaintiff at the time was exercising ordinary care for his own safety, and had not assumed the risk," that the jury should find for the plaintiff in such sum as would fully compensate him for the injuries received.

We think this a correct declaration of the law as applicable to the facts of this case.

The complaint alleges that appellant is a foreign corporation, and this fact is not denied, and it is said, therefore, that the Fellow-Servant Act cited above violates the Fourteenth Amendment to the Constitution of the United States, in that it denies appellant the equal protection of the law. This question has been thoroughly considered by this court and decided adversely to appellant's contention. *Ozan Lbr. Co.* v. *Biddie,* 87 Ark. 587; *Aluminum Co.* v. *Ramsey,* 89 Ark. 522; *Soard* v. *Western Anthracite Coal, etc., Co.,* 92 Ark. 504; *St. L. S. W. Ry. Co.* v. *Burdg,* 93 Ark. 92; *Ark. Stave Co.* v. *State,* 94 Ark. 34; *St. L., I. M. & S. Ry. Co.* v. *Brogan,* 105 Ark. 545; *St. L., I. M. & S. Ry. Co.* v. *Ledford,* 90 Ark. 543; *Keich Mfg. Co.* v. *Hopkins,* 108 Ark. 578; *Chapman & Dewey Land Co.* v. *Woodruff,* 116 Ark. 189.

And the fact that appellant is a foreign, instead of domestic, corporation, can make no difference. The statute applies to them alike. *Woodson* v. *State*, 69 Ark. 521; *Western Union Tel. Co.* v. *State*, 82 Ark. 309.

(2)    It is finally insisted that error was committed by the court in refusing to reprimand counsel for appellee for statements contained in his closing argument. This argument consisted in a statement by Mr. Frank Pace that he would not represent corporations in cases of this character for fear that he might do some cripple an injustice, and that he would suffer the loss of his arms, or would have his tongue cleave to the roof of his mouth, before he would represent a corporation in an attempt to defeat the assertion of a claim as just and meritorious as the one the jury was then considering. We think this argument was too impassioned and, therefore, an improper one, but we cannot say that it was prejudicial in this case. Counsel for appellant had severely criticised appellee's testimony and had argued that it was false, yet he stated that the experience and skill of Mr. Pace was such through connection with many cases of this kind that he could, and would, make it appear plausible, notwithstanding it was false. This attack invited the response, and while the response was perfervid it was but the expression of counsel's own view. Personalities should be avoided, as they tend to throw no light upon the issues of the case, but one who throws down the gauntlet may not complain against him who picks it up where the challenged party does no more than repel the challenge or defend himself from some charge which might militate against the cause he represents.

Finding no prejudicial error the judgment is affirmed.