HALL v. JONES.

Opinion delivered April 30, 1917.

1. ARSON—CIVIL LIABILITY OF DEFENDANT.—Where defendant caused plaintiffs' property to be burned, plaintiff may recover from defendant the entire loss without diminution for any sum paid by the insurance companies.

2. TRIAL—INCOMPETENT TESTIMONY—EXCLUSION OF SAME—REMOVAL OF PREJUDICE.—The prejudice resulting from the admission of improper testimony held removed by the trial judge, who instructed the jury not to consider the same.

3. TRIAL—IMPROPER ARGUMENT—PROVOCATION—REMOVAL OF PREJUDICE.—Where counsel for appellee indulged in improper argument, upon provocation by appellant's counsel, the prejudice thereof is removed where the court instructs the jury not to consider the same.

4. TRIAL—ARGUMENT OF COUNSEL.—In argument counsel have no right to make any affirmative statement of a fact which is unsupported by the evidence; counsel may draw any reasonable inference from the testimony, but they have no right to give testimony in the form of an argument.

Appeal from Hot Spring Circuit Court; *W. H. Evans*, Judge; affirmed.

*Hal L. Norwood*, for appellants.

1. The evidence is insufficient to sustain the verdict, reviewing the testimony.

2. Plaintiff had no right to take inconsistent positions in the courts. The fifth instruction as to measure of damages was error.

3. The remarks of plaintiff's attorney were improper and prejudicial. 52 Ark. Law Rep. No. 7; *Ry. Co.* v. *Harston;* 121 Ark. 249; 103 *Id.* 356; 100 *Id.* 437; 87 *Id.* 461, 515; *Ib.* 581; 82 *Id.* 562; 81 *Id.* 87, 231; 80 *Id.* 292; 74 *Id.* 298; 70 *Id.* 305; 63 *Id.* 174; 61 *Id.* 130; 48 *Id.* 106.

*Hogue & Heard* and *W. M. Carden,* for appellee.

1.   The evidence is ample.   The jury were warranted in finding that Waddell burned the house and that there was a conspiracy.   114 Ark. 112; 107 *Id.* 476.   It was to appellant's interest to destroy the house.   The Halls were the first to learn of the fire.   The evidence of Claxton and W. H. Hall was competent.   108 Ark. 191.

2.   There is no error in the instructions.   23 L. R. A. (N. S.) 870, and cases cited.

3.   The argument of counsel was neither improper nor prejudicial.   They were mere comments upon the evidence and were permissible under the circumstances. But the court corrected the error, if any.   The judgment is correct.

SMITH, J.   Appellee sued appellants for damages, both compensatory and punitive, to compensate an injury sustained by her as the result of the loss by fire of her home and its contents.   She alleged that appellants had hired one Stray Waddell to burn her house in order that they might collect the insurance thereon and apply it to the debt due them by appellee.   She recovered judgment for $500 compensatory, and $300 punitive, damages, and this appeal has been prosecuted to reverse that judgment.

A reversal is asked upon four grounds.   First, that the evidence is insufficient to sustain the verdict of the jury.   Second, that an erroneous instruction was given on the measure of damages.   Third, that incompetent evidence was admitted.   Fourth, that prejudicial error was committed by the court in permitting counsel for appellee to make certain remarks in the presence of the jury and certain statements in his closing argument.   We will discuss these assignments of error in the order stated.

It is earnestly insisted that the evidence does not support the verdict.   That it is sufficient only to arouse a suspicion of appellants' guilt, and that a satisfactory explanation was offered by appellants of the incriminating circumstances.   Appellants denied the offense charged with great vehemence, and offered explanations of the various circumstances offered in proof in support of the

charge of guilt. Had these explanations been credited by the jury, a verdict could not have been returned against appellants. Manifestly, however, these statements were not accepted, and it remains only to determine whether the evidence against appellants, when given its highest probative value, together with all inferences reasonably deducible therefrom, is legally sufficient to support the verdict.

This evidence may be summarized as follows: Appellee purchased from J. H. Hall a house and lot in the city of Hot Springs, on May 23, 1911, for the consideration of $1,700. In payment therefor, she conveyed to Hall a 160-acre tract of land, which was treated as a cash payment of $500, and she executed twenty promissory notes, each for $60, one to become due every six months, and all to bear interest at the rate of 8 per cent. per annum, from date until paid; but there was a verbal agreement that, if she could make her payments at the rate of $10 each per month, no interest should be charged. There was also an agreement that appellee should keep the property insured, and that the policy should be made payable to appellant J. H. Hall as his interest might appear, and, pursuant to this agreement, appellee took out two policies, for $500 each, with loss payable to Hall. Five of the purchase money notes had been paid, leaving a balance of $900, exclusive of interest, when appellee defaulted in her payments. Upon complaint of this fact being made to appellee, who is a colored woman—by Hall, she explained her default by saying that she had been unable to secure roomers for her house, when Hall asked if she would furnish rooms to white men, and she stated she would do so, and Hall promised to assist her in securing white men to take her rooms. A few days later, a crippled white man named Stray Waddell, applied to appellee for a room. This man was a notorious police character, and had served more than one term in the penitentiary. He had a piece of paper in his hand, upon which appellee's name and street and telephone number were

written, and this street number was "3," a number used only by appellant, as he had four or five cottages on the same lot, all of which were given the same street number by appellant. Appellee's number appeared in the telephone directory as No. 4, but appellants had never recognized this number. Appellee asked Waddell if Hall had sent him to her, and received a negative answer. Waddell was accepted as a lodger, and went away promising to return the next day, but he failed to do so. On the night of the next day, an attempt was made to burn the house, but the fire was discovered before it had gained much headway, and a fire company which arrived promptly extinguished the fire before much damage had been done. The evidences of an incendiary origin of the fire were so patent that the insurance companies undertook to cancel the policies, but Hall demanded the five days' notice provided for by the policies, and, in discussing this first fire with appellee, Hall told her she would have made money if she had let the house burn. Two days after the first fire, Waddell returned and occupied his room. The next morning appellee left early for her work, and a short time afterward Waddell was seen leaving the house, and as he left he was observed to stop and look back, and in a very short time flames burst through the windows and the roof. A short distance away Waddell met a party who told him the house was burning, but Waddell made an indifferent remark and proceeded on his way.

W. H. Hall and appellee had a conference just after the fire, and upon Hall's advice appellee reported the occurrence of the fire to the chief of police. When she had given a description of her lodger to the chief of police, that officer said the man she had described was Stray Waddell, whereupon Hall insisted that such was not the case, and assigned as a reason for his definite opinion that Waddell was not the man described, the fact that the neighbors near the scene of the fire had given a description of the lodger which did not describe Waddell. The

Halls were dealers in second-hand goods, and they admit their introduction to Waddell consisted in the purchase from him of a handbag which proved to have been stolen, and was reclaimed by the owner before the fire. The Halls explained, however, that they were unaware of the fact that the bag had been stolen. Hall admits that Waddell pawned clothes with him on several occasions after the fire. It was shown that Waddell had no money on the day before the fire, while on the morning of the fire he had at least two ten-dollar bills, and some change. Hall testified at the trial of this cause that he did not believe Waddell was the man described by appellee because, on the morning of the fire, Waddell was at his store, and, crippled as he was, he could not have walked from the scene of the fire to Hall's place of business between the time of the fire and the time Waddell was at Hall's store. Hall testified that he changed a ten-dollar bill for Waddell, and the inference is that this was done about the time the fire was raging. Appellee's house was about one and a half miles distant from appellant's place of business; but street cars ran from near the house to appellants' store. It is appellee's theory that this evidence was false and was the proof of an alibi which had been arranged.

A witness testified that, while the house was burning, and before the fire department had arrived, J. H. Hall, who was at his place of business one and a half miles away, called over the phone and inquired about the fire, and, upon being told that it was the house of appellee, was heard to laugh. W. H. Hall testified that he was the party who talked with this witness over the telephone, and that he had learned of the fire from a man named Smith, who told him that smoke was boiling up over the mountain in the direction of the property.

A witness named Heskett, who ran a saloon which Waddell frequented, testified that Waddell had been loitering around his saloon without any money prior to the fire, and that on the morning of the fire, Waddell came

into the saloon and bought drinks for himself and the crowd then present, and had asked the witness and some others to take breakfast with him, whereupon he remarked to Waddell, "You seem to be flush today," and Waddell said, "Yes, I made $50 last night, and I will have $25 more as soon as I can go down to Hall's; he owes me $25 yet," and that witness and some others ate with Waddell, who paid for the meal. Hall was not present, and an objection was made to this statement about the transaction with Hall, which objection was sustained and the jury was told to disregard that statement.

It was shown that suits were brought against the insurance companies, in which appellee and the Halls were joined as plaintiffs, and that a judgment was recovered in each case for $500, the face of the policy, and for an attorney's fee of $100, and the statutory penalty. It was shown, however, that, notwithstanding the fact that J. H. Hall had collected this judgment, he had credited appellee's account with the sum only of $1,000, and did not pay her any part of the penalty, and had brought suit against her to foreclose their vendor's lien for an alleged balance of $508.61 of purchase money.

In this connection, it may be said that appellants insist that the fire was not profitable to them. But appellee insists that the money which they received, and the money which they expected to receive as a result of the suit to foreclose the vendor's lien securing the balance of the unpaid purchase money, made the fire more profitable than the receipt of payments of $10 per month would have been. This was a matter of defense, however, which was submitted to and has been passed upon by the jury.

There are a few other circumstances discussed in the briefs which tend, on the one hand, to incriminate, and, on the other, to exculpate, which would cause this opinion to be unduly protracted if they were discussed.

(1) It is said that the instruction on the measure of damages is erroneous, in that, it did not require that there should be deducted from the loss on the building the

amount of insurance collected and credited upon appellee's notes. But we do not agree with learned counsel in this contention. The lowest valuation placed on the building by any one was $1,650, and the furniture was valued at $560, making a total of $2,210, which exceeds by several hundred dollars the amount of the judgment for compensatory damages and the amount of insurance collected. Moreover, if appellants did cause this property to be burned, they should pay its value, and it avails them nothing to show that the property was partly insured. If guilty as charged, appellants should pay the amount of the entire loss, without diminution for any sum paid by the insurance companies.

We need not consider here the right of subrogation in favor of the insurance companies, as the record does not present that question. But the law of that subject is discussed in the case of *Illinois Cent. R. R. Co.* v. *Hicklin,* 23 L. R. A. (N. S.) 870 (Ky.), 115 S. W. 752. And in the note a large number of cases are cited. See, also, *Railway* v. *Fire Ins. Assn.,* 60 Ark. 332; *Railway Co.* v. *Fire Assn.,* 55 Ark. 163.

(2) It is said that prejudicial error was committed in permitting Heskett to testify as to Waddell's statement in regard to the money in his possession, and that which he expected to receive from Hall, as Hall was not present, and the conspiracy, if one existed, had been terminated. On the other hand, it is argued that the evidence should not have been excluded because the conspiracy, if one existed, was to swindle the insurance companies through an incendiary fire, and that the collection of the money promised Waddell as compensation for his connection with it was a part of the conspiracy. However this may be, the evidence was excluded and the jury told not to consider it in making up their verdict, and we think the prejudice, if any, was thereby removed.

(3) Attorney for appellee offered in evidence a copy of the complaint filed by J. H. Hall, in which he asked foreclosure of his vendor's lien. Attorney for appellants'

objected to the introduction of this record, upon the ground that Hall could not collect any more money from appellee than was due him, whereupon appellee's attorney said, "Oh, you are no lawyer at all. Your client can do a thousand things you would never think of." Objection was made to this remark, and the court was asked to reprimand counsel for making it, whereupon the court said: "The jury will not consider any remarks of the counsel, and will only consider the evidence in the case."

And, in his concluding argument, counsel for appellee said, "W. H. Hall is one of the slickest men in Arkansas, and his old father there is no better. If he would turn his talent in the right direction, he might make a useful citizen." Objection was made to this statement, whereupon the court said, "Counsel is only giving his opinion," and the attorney replied, "I insist that the evidence shows my statement to be true." The court refused to tell the jury to disregard the remark, or to reprimand the attorney for making it, to which action an exception was duly saved.

The first remark appears to have been provoked in a measure, at least, by the statement of appellants' counsel that, "If what counsel for plaintiff had said was true, Tessie Jones ought to have another attorney." Such remarks are always improper, as they tend to divert the attention of the jury from the consideration of the evidence and to inject into the case irrelevant matter, which the jury might consider as well as, or even instead of, the evidence. But one should not invite this practice by indulging in it himself, and then complain that adversary counsel had followed his lead. *Caddo River Lbr. Co.* v. *Grover,* 126 Ark. 449, 190 S. W. 560. The court sustained the objection of counsel and directed the jury to disregard the remark of counsel and to consider only the evidence in the case; and we think, under the circumstances, this admonition cured the prejudice, if any, resulting from the remark.

(4) Special emphasis is laid on the alleged prejudicial remarks of attorney for appellee made in the closing argument set out above. The objection to this argument was overruled, and we must, therefore, determine whether it was prejudicial. We are cited in the brief of learned counsel for appellants to numerous decisions of this court on this subject, and, among others, to the recent case of *St. Louis, I. M. & S. Ry. Co.* v. *Hairston,* 125 Ark. 314. In that case there was a restatement of the general principles controlling the decision of the question now under consideration, and we there said that the difficulty encountered consisted, not in determining the principles to be applied, but in the application of those principles to the facts of each particular case, to ascertain whether prejudice had probably resulted. Among other cases cited in the brief is that of *German-American Ins. Co.* v. *Harper,* 70 Ark. 305. There the judgment was reversed because counsel had made a statement tending to impeach a witness against whose integrity no evidence had been offered. And it was there said, and the statement has since been repeated several times, that such conduct constituted reversible error. Counsel have no right to make any affirmative statement of a fact which is unsupported by the evidence. They have the right to draw any reasonable inference from the testimony, but they have no right to give testimony in the form of an argument. It is true the statement quoted contains an imputation of dishonorable conduct, but counsel stated that the evidence showed the statement to this effect to be true, and he did not assert it as a fact within his knowledge, but only as an inference to be drawn from the evidence. The charge was a serious one, but if the evidence warranted it, counsel had the right to make it. This suit itself was based upon a charge of the gravest import; indeed, to recover at all, it was necessary for the jury to find, from a preponderance of the evidence, that a felony had been committed, and, of necessity, the argument must question the integrity of the accused, and the right existed to make it, provided

the argument made was based upon the evidence, and counsel's insistence was that the evidence did warrant his argument. As he had the right to do so, no error was committed by the court in refusing to reprimand counsel for making it.

Finding no prejudicial error, the judgment of the court below is affirmed.