# Louisville & Nashville Railroad Company v. Reverman.

(Decided May 6, 1932.)

GALVIN & TRACY and ROUSE & PRICE for appellant.

ROBERT C. SIMMONS AND RICHARD VON HOENE for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is the second appeal of this case. On the former appeal, the judgment of the circuit court was reversed. The opinion of this court therein delivered will be found in 228 Ky. 500, 15 S. W. (2d) 300, 302. On the second trial, there was given a verdict for the plaintiff, this time for $15,000, and defendant is now appealing from the judgment.

The facts are largely undisputed. This court, in its former opinion, adopted the statement of the case as made by the appellant in its brief. Reference is here made to that opinion for a full and clear statement of the facts out of which the action arose, and it is therefore now required to make only a brief restatement of such portion thereof as conduces to clearness upon our consideration of the present appeal.

Eleanor Reverman, as administratrix of William Reverman, deceased, brought this action under the Federal Employers' Liability Act (45 USCA secs. 51-59) in the Kenton circuit court against the Louisville & Nashville Railroad Company to recover damages for his death. A trial of it before a jury resulted in a verdict and judgment for $12,000.

William H. Reverman was a yard conductor in the employ of the Louisville & Nashville Railroad Company. He was killed on the evening of February 2, 1926, while at work with his crew in the Cincinnati railroad yards adjacent to the Central Union passenger station in territory and on trackage under control of the Chesapeake & Ohio Railway Company.

The train movement in process was interstate in character.

Louisville & Nashville train No. 34 arrives daily in Cincinnati at 7:30 o'clock in the morning. In its make-up there are two express cars, which, about 10 o'clock in the morning, are removed to a track known as No. 4 in the adjoining yards, where their unloading and reloading is cared for, preparatory for their outgoing trip on train No. 31, leaving Cincinnati at 8 o'clock in the evening.

The Louisville & Nashville Railroad Company operates in the Cincinnati district under an arrangement with the Chesapeake & Ohio Railway Company, and the movement of all trains is under the control of the last-mentioned company.

This accident happened on track No. 4 to which the express cars had been removed.

This track No. 4 extends for a distance of 171 feet from a bumping post on the east to its intersection by a cut-over switch track, leading to Mills street freight station.

We are here concerned only with the portion of track No. 4 lying between the bumping post and this cut-over switch.

This 171 feet of track No. 4 comfortably accommodates the above-mentioned two express cars, each about 70 feet in length, and the track is used exclusively for this purpose. The contour of this track is saucer shaped; that is to say, the track descends some 75 feet from the bumping post and then ascends to the cut-over switch for some 96 feet. The level of the track at the bumping post is 6 inches above the lowest point, and at the cut-over switch its level is 1 foot above the lowest point. When the two cars are on the track, they naturally hold in position by gravity.

It was the practice in making up the evening train, No. 31, each day not to take the two express cars out of track No. 4 at the same time.

Upon the occasion in question, Reverman and his crew were engaged in taking out of track No. 4 the head or first car, for the purpose of moving it to the station to be made up into train No. 31. The ordinary procedure in removing these express cars was, on the evening of Reverman's accident, it is undisputed, followed. This procedure was that the engine headed in on track No. 4 and coupled up with the first car. Reverman got the backup hose from the engine and proceeded to the point where the two cars were coupled. He uncoupled the cars and gave the engineer a signal to back up. The engine moved about 7 or 8 feet. Reverman signaled the engineer to stop, which he did. Reverman then went in between the two cars and attached the back-up hose, and while there, the other car, being on the descending grade, when the support of the first car was removed, rolled forward, and Reverman was caught between the two cars and was in this manner killed.

The plaintiff alleged that the railroad company was guilty of negligence in failing to brake or chock the eastern car when it was placed on the track in the morning

so as to prevent its movement when the western car was moved, as such was the usual practice of the crew, in placing the two cars on the track, to secure the easternmost car by brakes or blocks, so that it would not move when the other car was uncoupled from it, and that it was because of the negligence of defendant's agents, or railroad crew, in failing to observe this customary practice of so securing this car, that the plaintiff's resulting injuries occurred by which he was killed.

Defendant answered, controverting the allegations of the petition and denying the existence of such a customary practice and pleading contributory negligence and assumed risk.

Upon these issues joined and had by appropriate pleadings, trial was had, resulting in a recovery by the plaintiff of a verdict and judgment thereon for $12,000.

In the appeal prosecuted by the defendant, as stated, from that judgment, this court reversed the judgment and remanded the case for a new trial consistent with its opinion therein given.

Upon a retrial of the case, judgment was again recovered against the defendant company, from which the appellant prosecutes this, its second appeal, seeking a reversal of the judgment, and urges as grounds therefor that (1) the trial court should have peremptorily instructed the jury to find for the defendant, and (2) that the instructions were prejudicially erroneous.

Reference to the previous opinion will disclose the questions presented and therein determined. The opinion will show that this court therein stripped the case of all questions to be solved and issues had thereon except one, upon its retrial, and the lower court was directed to modify the instruction it gave, upon which a reversal of the judgment was made, so as to submit to the jury the one question of whether "it was the customary practice to secure the easternmost car by brakes or blocks when it was placed on the siding by the morning crew." In the opinion it was further said:

"No rule having been promulgated to cover the situation in question, the only issue was whether or not it was the customary practice for the morning crew to brake or chock the easternmost car."

And, in discussing the instruction as given by the lower court, held that it committed error, in assuming it

was the duty of the appellant's employees so to secure said car when placing it on the track, as the existence of such a custom was the crucial question upon which the case hinged, and was one which should properly go to the jury upon the proof, to be by it determined whether or not such "customary practice" did in fact exist, and in its opinion set out how this error so committed in its instruction given should be corrected, as follows:

> "The instruction should first have submitted to the jury the question as to whether or not it was the custom to so secure the car, and, if it was, then it was the duty of the crew that placed the cars on the track on the day that Reverman was killed to so secure the easternmost car."

From this it will be seen that the determination of the existence of this alleged "customary practice" became the inflexible law of the case, which rule of law has become firmly established in this state, and was again declared by this court in the case of New York Life Insurance Co. v. Long, 235 Ky. 806, 32 S. W. (2d) 403, 405:

> "The law of the case requires that all questions lurking in the record must be raised upon the appeal and may not be raised thereafter. It applies to instructions not offered, but which might have been offered, on the earlier trials. Pickrell v. Wilson, 217 Ky. 430, 289 S. W. 1100; Muth v. Nunnelley, 202 Ky. 402, 259 S. W. 1011; Ky. Traction & Terminal Co. v. Downing's Admr. 159 Ky. 502, 167 S. W. 683; L. & N. R. Co. v. Rowland's Admr. 227 Ky. 851, 14 S. W. (2d) 174; Metropolitan Life Ins. Co. v. Penick, 227 Ky. 490, 13 S. W. (2d) 496."

Also, see, C. & O. Ry. Co. v. Pack, 204 Ky. 9, 263 S. W. 354, and Vanhoose v. C. & O. Ry. Co., 214 Ky. 594, 283 S. W. 953, 954; the latter case announcing this rule to be:

> "The opinion on a former appeal, whether right or wrong, is binding alike on the parties and the courts, and a decision on a former appeal that a verdict should have been directed for defendant is the law of the case at a subsequent trial where the evidence is substantially the same as that heard on the first trial."

Upon the first appeal, appellant had argued that a peremptory instruction should have been given for it upon the grounds that appellee was barred the right of recovery through having assumed the risk of his employment and because of his alleged contributory negligence and because of the further ground that, the action having been brought under the Federal Employers' Liability Act (41 USCA secs. 51-59), the evidence should be weighed and measured by the federal rule as to its sufficiency thereunder, to submit to the jury, asserting its failure to satisfy such test.

In the opinion given upon this first appeal, these claims were held adversely to the contention of appellant, except that the court did not therein make an express holding as to the sufficiency of the evidence, stating that likely, upon a retrial of the case, the evidence would be somewhat different, and that it was unnecessary to rule thereon, inasmuch as the case would have to be reversed because of prejudicial error committed by the lower court in giving instructions complained of.

This court having upon its remand of the case directed a submission to the jury of the question as to whether or not it was the custom to secure the car, etc., it is proper that we should now consider and try to determine the court's meaning in its use of the word "custom."

Appellant contends that "custom" was here used in its technical sense as defined by Bouvier's Law Dictionary, the Century Dictionary, Black's Law Dictionary, and as defined by the Louisiana Civil Code, art. 3, as adopted by the federal Supreme Court in the case of U. S. v. Buchanan, 8 How. 102, 12 L. Ed. 997, as follows:

"Customs result from a long series of actions, constantly repeated, which have, by such repetition and by uninterrupted acquiescence, acquired the force of a tacit and common consent."

But such custom as thereby defined is one that really becomes a part of, and may be invoked to change the words of, a contract, and is really a part of the common law itself.

On the other hand, appellee contends that the "custom" or "practice" meant by the court, the alleged existence of which was to be submitted to, and considered

by, the jury, refers rather to a "customary practice" or a "continued observance by the master of such methods of work and precautions by a servant as he has been accustomed to follow and observe, even though they are not required by the printed rule of the master."

Appellee upon the retrial, by way of proving the existence of this alleged "custom," introduced some six witnesses who had been employees of the defendant company for a considerable period of years next before the decedent's (Reverman's) accidental death in February, 1926, wherein they testified that they had placed these cars on track No. 4, and that their habit or custom was, when placing them on this track in the morning, to crotch the far or easternmost car, some of them saying that they would so secure both cars when placing them on the track, and also that they saw others following the same method of securing the far or east car when shoving them back to the bumping post on track No. 4. There was not entire harmony between the witnesses as to just what was the particular method or the purpose sought in the observance by them of this custom, but it was variously and differently stated by them as being for the evident "purpose of preventing the easternmost car," or, as stated by one, both cars, "from rolling down and injuring any property or killing anyone" or for the "safety of other crews coming in and out of there." Also the switching crew working with Reverman, when killed, composed of the fireman, engineer, and head switchman, testified that the operation of taking out the car was done on that evening by Reverman just as "we did it every night," and stating further that such way was their "customary method of operating," which testimony to an extent served to substantiate appellee's claim that Reverman relied on the custom of the morning crew to block the east car.

The testimony of these witnesses, showing what was their regular practice, as well as their observation, that other employees of defendant company, when moving the cars onto track No. 4, followed the same custom or method of blocking or crotching the east car, to hold it secure when its supporting or west car was withdrawn, very substantially and positively serves to show that there was such an established "customary practice," as alleged, existing there among these switching crews of appellant while performing the work of placing upon and

moving these cars from track No. 4, as constituted a custom or settled practice, which was recognized by them as being the agreed and proper way of performing this work, and that such custom had existed for so long a period among them as to justify these switchmen in relying upon and expecting this work to be done according to this customary practice.

Appellant's witnesses contradict by their testimony the evidence of appellee's witnesses, and state that, while there was a "custom" existing for the handling of these cars on track No. 4, it was different from and other than the customary practice testified to by appellee's witnesses.

The effect of the evidence of both groups, however, is to show the existence of a "customary practice," so the issue becomes one for determining whether the customary practice thus shown to exist was the one alleged and claimed by appellee or a different custom as claimed by appellant.

This determination became a question for the jury, and we deem appellee's evidence was sufficient, even measured by the federal rule applicable thereto, to go to the jury upon the issue as to the existence of the alleged "custom."

Appellant relies very strongly upon the case of C., M. & St. P. Ry. Co. v. Lindeman (C. C. A.), 143 F. 946, 949, in support of his claim that the custom or customary practice contended for by appellee was not sufficiently proven to exist, to support a recovery based thereon, and reference to that case would tend to support appellant's contention or claim, but our attention is also called to the later case of St. L. & S. F. Ry. Co. v. Jeffries (C. C. A.), 276 F. 73, decided by the same court some fifteen years after deciding the former case, which appears to have so modified the Lindeman case, as to announce a rule of law in accord with appellee's contention.

In the Jeffries case, supra, it is alleged that the plaintiff was injured by reason of being thrown from a train, the engineer having increased the rate of speed without first giving the usual and customary signal that the train was about to proceed. In discussing the matter of such custom, the court used this language:

"Defendant by its answer denied generally the allegations of the complaint and pleaded contribu-

tory negligence and assumption of risk. The first alleged error assigned is that the trial court erred in refusing to direct a verdict for the defendant because the alleged custom was not proven. . . .

"An examination of the evidence of the plaintiff and his witnesses convinces us that counsel are mistaken when they say that there was no evidence that the custom was uniform. We are of the further opinion that it was not incumbent on plaintiff to show such a custom as would make it a rule of the common law. A servant has the right to rely on signals and warnings customarily given in the conduct of the business in which he is engaged, and if the master fails to give these, he is negligent. . . ."

In the case of C., M. & St. P. Ry. Co. v. Dutcher (C. C. A.), 182 F. 494, 495, there was judgment for the plaintiff, and the defendant brought error to the appellate court, and in its opinion the court said:

"The deceased worked on and about a main railroad track, which ran alongside a coal shed at which engines were coaled. His duties were to pick up and care for the coal which fell from the cars and chutes, and to remove cinders from the track and a cinder pit and wheel them away. . . . The case of the administratrix depended upon the existence of a uniform custom of the company, upon which deceased had a right to rely, to place a trainman on the end of the moving cars, or to have one running beside them, to notify him of their approach. The existence of such a custom was the controlling question of fact at the trial. It was conceded the precaution was not observed by the company.

"Complaint is made by the company that the trial court denied its request for a directed verdict. A careful examination of the record has convinced us that there was substantial evidence supporting the case of the administratrix, and that it may be found in the testimony of witnesses Balow, Brown, and Julius Capon. It is sufficient to say, without reciting it in detail that some of it was direct and positive. . . ."

Also see the cases L. & N. R. Co. v. Hays' Admr. (Ky.) 128 S. W. 289; White's Admr. v. Ky. Pub. El.

Co., 186 Ky. 91, 216 S. W. 837; Sheehy v. Minn. & St. L. R. Co., 126 Minn. 133, 147 N. W. 964; Com. El. Co. v. Rooney, 138 Ill. App. 275.

It will be noted, as argued by appellee, that this is not a case of negligence based on customary violation of a rule, but is one which "involves the failure to follow a method of work or practice designed to protect other workmen," and that it is not a case where custom is invoked to modify a written contract, but involves failure to follow a protective method of work or practice. See L. & N. R. Co. v. Hays' Admr. (Ky.) 128 S. W. 289; White's Admr. v. Ky. Pub. El. Co., 186 Ky. 91, 98, 216 S. W. 837; L. & N. R. Co. v. Kirby, 173 Ky. 399, 191 S. W. 113; I. C. R. Co. v. Evans, 170 Ky. 536, 539, 186 S. W. 173; C., N. O. & T. P. R. Co. v. Barber, 31 S. W. 482, 17 Ky. Law Rep. 424; Sheehy v. Minn., Etc., R. Co., 126 Minn. 133, 135, 147 N. W. 964; Com. El. Co. v. Rooney, 138 Ill. App. 275, 293; Chapman, Etc., Co. v. Woodruff, 116 Ark. 189, 173 S. W. 188.

Appellant further contends that there was error in the instructions given. The lower court, in its apparent effort to conform its proceedings with the directions as laid down in the former opinion to correct its error of assumption made in the previous instructions given, by submitting the question of the existence of this "customary practice" to the jury, did instruct them as follows:

"If the jury believe from the evidence that at and previous to the time the decedent, William Reverman, was injured it had been the usual and customary practice of defendant's employees in placing the express cars, in the proof described, on track No. 4, to set the brake on the east car and place a chock under the wheels thereof in order to hold same in place when the other car, or west car, was cut off, and that such practice or custom, if any there was, existed for a sufficient length of time previous to the date of decedent's death for such custom, if any there was, to become generally known to the switchman and employees of defendant who were engaged in taking out cars from said track; and if the jury further believe from the evidence that the employees of defendant who placed said cars on said track on the morning decedent was injured, negligently failed to set the brake on the east car and to place a chock

under the wheels thereof, and if they further believe that by reason of such failure, if any there was, the decedent, while exercising ordinary care for his own safety, and while engaged in attaching the back-up hose to the west car, was struck by the east car rolling against him, and was thereby injured, then the jury will find a verdict for plaintiff, but unless they so believe they will find a verdict for the defendant.''

The court further gave instruction No. 1½, which, as stated in the briefs, was offered by appellant, as the converse of instruction 1 given by it and objected to by appellant.

We are of the opinion that this instruction fairly submitted the issue to the jury as to the existence of the alleged custom, and also properly defined the custom by the qualifying clause that it should be a customary practice that ''existed for a sufficient length of time previous to the date of decedent's death for such custom, if any there was, to become generally known to the switchmen and employees of defendant who were engaged in taking out cars from said track.''

We are further of the opinion that complaint of appellant that the court should have given a further instruction, ''E'' offered by him, defining ''custom'' as meaning a regular ''continuous course of action'' and not ''an occasional or sporadic one,'' is without merit, as instructions Nos. 1 and 1½ given afford a definition of the ''practice'' or ''custom'' meant quite as well and clearly as the proposed definition that it should not be an occasional or sporadic act. See case L. & N. R. Co. v. Engleman's Admr. 135 Ky. 515, 122 S. W. 833, 21 Ann. Cas. 565; C., N. O. & T. P. R. Co. v. Silvers (Ky.), 126 S. W. 120; M. & B. S. R. Co. v. Willis, 104 S. W. 1016, 31 Ky. Law Rep. 1249. Neither do we conceive that there is any merit in the contention of appellant that the court should have given instruction ''D'' offered by it, wherein was set out rule ''N'' of the Louisville & Nashville Railroad defining the duties of its employees and containing among others, the provision that the switchmen should not go between the rails or the cars in performing their work of coupling or uncoupling cars or attaching the car hose ''while the car was in motion,'' for the reason both that the same is inapplicable to what was the situation of the decedent employee at the time of his accident by

reason of the fact that the evidence clearly shows that the car to which he proposed to attach the hose was at the time of his going between the rails to do so stationary or was not in motion, and further because it held in the first opinion that the rules of the Louisville & Nashville Railroad Company were not applicable to the accident befalling its decedent employee, for the reason that the yards or territory wherein the accident occurred was under the sole control of the Chesapeake & Ohio road, where its rules and regulations only were in effect and operation.

We have carefully considered and reviewed the whole record presented upon this appeal, and have concluded that the lower court committed no prejudicial error in its retrial of this cause, and that the judgment therein recovered should be, and is, affirmed.