ARKANSAS LAND & LUMBER COMPANY *v.* FITZHUGH.

Opinion delivered March 29, 1920.

1. MASTER AND SERVANT — NEGLIGENCE — EVIDENCE.—Evidence *held* sufficient to sustain a verdict in favor of a brakeman injured through negligence of the master.

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—On appeal from a judgment on a verdict of the jury, the facts will be viewed in the light most favorable to appellee.

3. MASTER AND SERVANT—INSTRUCTION—ASSUMED RISK.—An instruction on a particular phase of assumed risk, not purporting to give a complete definition of "assumed risk" nor to state all the circumstances which call for its application *held* not objectionable as ignoring the question of assumed risk when the danger is patent.

4. MASTER AND SERVANT—ASSUMED RISK.—A servant does not assume the risk of the master's negligence which he could have discovered by the exercise of ordinary care; he must have known of such negligence and appreciated the danger.

5. APPEAL AND ERROR—INSTRUCTION—HARMLESS ERROR.—In an action for injury to an employee wherein the defenses of contributory negligence and assumption of risk of patent danger were interposed, failure of an instruction on assumed risk to embrace the assumption of risk of patent dangers was harmless where proper instruction as to contributory negligence was given and the jury found that plaintiff was not negligent, since such finding was conclusive of the question of assumed risk of patent danger.

6. APPEAL AND ERROR—HARMLESS ERROR—INSTRUCTION.—In an action by an employee, an instruction on the measure of damages which ignored the question of reduction of damages by reason

of contributory negligence was harmless where other instructions made the employee's right of recovery depend upon his freedom from contributory negligence, since the jury, in finding for plaintiff, necessarily found that there was no contributory negligence.

7. DAMAGES—WHEN NOT EXCESSIVE.—Where plaintiff's injuries to his foot and breast caused extraordinary pain which continued to the trial, and rendered his foot as useless as if the whole foot and ankle had been removed, a verdict of $10,000 was not excessive.

Appeal from Calhoun Circuit Court; *C. W. Smith,* Judge; affirmed.

*T. D. Wynne,* for appellant.

1. Plaintiff assumed the risk and was also guilty of contributory negligence. The risk was patent and visible. 88 Ark. 548; *Ib.* 243; 101 *Id.* 197; 104 *Id.* 489; 118 *Id.* 304; 134 *Id.* 491; 56 *Id.* 232; 98 *Id.* 202; 3 Labatt on Master & Servant (2 Ed.), par. 1174, 1179-1183.

2. The court erred in its instruction to the jury. They ignore the defense of assumption of risk, and the contention of defendant that the injury was cause from a defect in the pilot which was plainly visible and patent and could have been seen and known by casual observation. 134 Ark. 491; 118 *Id.* 304; 101 *Id.* 201; 60 *Id.* 438. The instructions given were also contradictory and conflicting and hence prejudicial.

3. The verdict is excessive. 72 Atl. 426; 116 N. Y. S. 1150; 174 Fed. 477; 181 *Id.* 276; 131 S. W. 714.

*Pace & Davis,* for appellee.

1. There is no error in the instructions; the doctrine of assumed risk was fully and clearly declared and the instructions are harmonious.

2. The verdict is not excessive. 107 Ark. 512; 105 *Id.* 533; 89 *Id.* 87; 87 *Id.* 641; 81 *Id.* 187; 124 *Id.* 298; 89 *Id.* 522; 88 *Id.* 225.

McCULLOCH, C. J. Appellant is a foreign corporation and operates a lumber mill at Malvern, Arkansas, and in connection therewith also operates a short

line railroad for the purpose of hauling logs from the woods to the mill. On December 19, 1918, and for a time prior thereto, appellee was employed by appellant as brakeman on the logging train. Three men were engaged in operating the train, the engineer, the fireman and the brakeman. Among the other duties of appellee, one was to ride out on the pilot of the engine and throw the switch so as to cut the engine loose and let the cars run around the "Y" track. On that day as the train left Malvern appellant was, as usual, sitting on the head-block of the pilot, and as the switch was approached he stepped down on the step and was standing there preparatory to stepping off to throw the switch, when the lower end or nose of the pilot was caught by the guard rail at the switch and the pilot, with appellant standing on it, was thrown back under the engine and appellee's foot was cut off.

This is an action to recover damages on the allegation that appellant was guilty of negligence in permitting the pilot to get out of repair in that it hung so low that it could not pass over the guard rail. There was a plea of contributory negligence and of assumption of risk, as well as a denial of the charge of negligence. Appellee recovered $10,000 by the verdict of the jury, and an appeal has been prosecuted to this court.

The testimony was abundantly sufficient to sustain the verdict, though there were sharp conflicts in it. The facts established by the testimony, viewing it in the light most favorable to appellee, are that two days before appellee's injury there was a collision with a coal car, and the engine was disabled. The knuckle on the coupler was broken, and the pilot was loosened so that it swung low and was in danger of striking the rails. The master mechanic was notified, and under his direction another trip was made that day with the engine without accident, but it was taken to the repair shop for repairs. Another engine, a smaller one, was furnished to the men for operation the next day, and on the succeeding day, which was the day of the injury, the men went to their place

of work with the expectation of using the smaller engine, but the master mechanic pronounced the other engine in repair and good order and directed them to take it out, which they did. They made one trip in the forenoon and started out on a second trip in the afternoon, when, as before stated, the pilot struck the guard rail at the switch and threw appellee from the position in which he was standing on the pilot and the engine ran over his foot and cut it off. He was also injured about his breast.

The evidence shows that at the time this occurred the pilot of the engine was swinging low, and that this was the cause of it striking the guard rail. The evidence was, in other words, sufficient to establish negligence on the part of the servants of appellant in failing to properly repair the engine with respect to the position in which the pilot hung.

The instructions on this issue were in accordance with repeated decisions of this court, and were correct. That issue must be treated as fully settled by the verdict of the jury.

There was, however, a plea of contributory negligence on the part of appellee, and also of assumption of risk on his part, and it is earnestly contended that the instructions of the court did not properly submit the issue of assumed risk. The following instructions are singled out as those that contain glaring errors in the submission of this question:

"No. 2. While the servant assumes all the ordinary risks incident to his employment, yet a duty rests upon the company to commit no act of negligence whereby he may suffer injury, and to exercise ordinary care to protect him from danger, and in this case if you believe that the plaintiff M. H. Fitzhugh was injured while riding the pilot of one of defendant's engines, by reason of the pilot catching upon a guard rail of the track, caused by the defective condition of the pilot on the engine, and that plaintiff was engaged in the performance of his duty at the time, and that the defendant at the time of the injury knew, or by the exercise of

ordinary care in making a reasonably careful inspection of the same could have known, of the condition of said pilot, and that the condition of the same was unknown to the plaintiff, and that the defendant, its agents or servants, thereby failed to exercise ordinary care to protect plaintiff from danger and that the defective condition of the pilot was the proximate cause of the injury, and that plaintiff was at the time exercising ordinary care for his own safety and had not assumed the risk, you will be authorized to find for the plaintiff and assess his damages at such a sum as will from the evidence fully compensate him for the injuries received.''

''No. 3. In this case, if the injury was the result of any risk or hazard ordinary or usually incident to the plaintiff's employment, he assumed that risk and cannot recover, but he does not assume any risk created at the time of the injury by the negligence of the defendant, its agents or servants, of which he did not know, and if his injury was the result of said negligence of the agent or servant of the defendant, then he did not assume such risk.''

''No. 7. The servant does not, when he enters into the service of another or while he continues in that service, assume the risk of dangers that arise from the negligence of the master, unless he is aware of the negligence and appreciates the danger therefrom, and in this case unless it appears from the evidence that the plaintiff at the time of the injury knew that the pilot of the engine was defective and appreciated the danger of riding thereon and thereby elected to take his chances or that the defect in the pilot and the danger from riding thereon was so open, obvious and imminent that an ordinarily prudent man would not have continued in the work, then the plaintiff can not be held to have assumed the risk of the injury.''

The contention is that these three instructions ignored that phase of the law of assumed risk to the effect that the risk is assumed not only when the servant is aware of the negligent act and appreciates the danger,

but also where the defect which causes the danger is so open and obvious that a person of ordinary prudence would not continue in the work. Instruction No. 7 is certainly not open to that objection, for it expressly embraces that phase of the law. The other two instructions deal with other phases of assumed risk, and it is true do not embrace the idea of assumption of risk by continuing in the work when the danger is patent and obvious.

Instruction No. 2 does not purport to give a complete definition of the term "assumed risk" nor to state all of the circumstances which call for its application. Therefore it can not be said that it ignores the question of assumed risk when the danger is patent.

Instruction No. 3 is correct in so far as it declares that the servant did not assume the risk of the negligence of the master unless he was aware of it and appreciated the danger, for it would not be correct to say that the servant assumed the risk of dangers which he could have discovered by the exercise of ordinary care. *Southern Cotton Oil Co.* v. *Spotts*, 77 Ark. 458; *Choctaw, Oklahoma & Gulf Rd. Co.* v. *Jones*, 77 Ark. 367; *St. L., I. M. & S. Ry. Co.* v. *Birch*, 89 Ark. 424; *A. L. Clark Lumber Co.* v. *Northcutt*, 95 Ark. 291; *C., R. I. & P. Ry. Co.* v. *Smith*, 107 Ark. 512; *Mosley* v. *Mohawk Lumber Co.*, 122 Ark. 227.

Now, the fact that a servant continues in his work where the danger is patent marks the approximation of contributory negligence and assumed risk as stated in many of the decisions. *C. O. & G. Rd. Co.* v. *Jones, supra; St. L., I. M. & S. Ry. Co.* v. *Holman*, 90 Ark. 555; *Harramore* v. *C. C. C. & St. L. Ry. Co.*, 96 Fed. 298.

While the defenses of contributory negligence and assumption of risk proceed upon different theories, they approximate so nearly under the circumstances just mentioned that the same state of facts will sustain both. *St. L., I. M. & S. Ry. Co.* v. *Holman, supra.* Therefore, a finding of the jury on either one of those defenses is conclusive as to the other. *A. L. Clark Lumber Co.* v.

*Johns,* 98 Ark. 211. In that case we said: "The third instruction was incorrect in failing to embrace the qualification that, notwithstanding the promise to repair, etc., if the danger was so imminent and obvious that a person of ordinary prudence would not have continued in the work, the plaintiff assumed the risk. But we are of the opinion, in view of the other instructions and the verdict of the jury in passing thereon, that the omission was harmless. Where the servant is aware of the defect, and the danger is so imminent and obvious that a person of ordinary prudence would not continue in the work, he not only assumes the risk, but is guilty of contributory negligence. This is where the doctrine of contributory negligence and of assumed risk approximate so that they are indistinguishable." * * *

"Now, in the fourth instruction copied above, as well as in other instructions which we have not deemed it necessary to copy, the question of contributory negligence was fully and correctly submitted, and the plaintiff's right to recover made to depend on his freedom from that charge, and the jury necessarily found that he was not guilty of negligence. Therefore, if he was not guilty of negligence, he did not, while at work, in reliance on the promise of the master to repair the defect, assume the risk of the danger from the defect which the master had promised to repair."

So, in the present case, notwithstanding the fact that instruction No. 3 was erroneous in failing to embrace this phase of the law of assumption of risk, yet the submission of the same question under the name of contributory negligence, and a finding of the jury against appellant is conclusive that there was no prejudice to appellant in the omission of this phase of the law from the instructions referred to. This question was, in fact, submitted to the jury in instruction No. 7, already quoted. It was also submitted to the jury in instructions No. 3, No. 4 and No. 5, given at the request of appellant. Under those instructions, the verdict of the jury must necessarily be treated as a finding that the dangerous

condition of the pilot was not obvious, and this finding is conclusive of the question of assumption of risk, unless appellee actually knew of the condition and appreciated the danger, which question was properly submitted in the instructions. The proof is sufficient to warrant the finding that the condition was not open and obvious.

It is true that all of the witnesses who testified on the subject said that to one who made an examination of the pilot it was easily discoverable that it hung too low, but the servants had been assured that the engine was in proper condition for operation and no duty rested upon them to search for defects. They were only required to take notice of those which were open to ordinary observation. There is a conflict on this point, however. Witnesses introduced by appellant testified that the engine was in some kind of collision on the day of appellee's injury, and was brought back to the shop by appellee and the other operatives to have it repaired, and that appellee knew when they took it out again that the pilot was hanging too low. The testimony is positive on this subject, but appellee and the other men who operated the engine denied it and said that nothing happened to the engine after the collision two days before appellee's injury. The conflict was settled by the verdict of the jury.

Again, it is urged as grounds for reversal that an instruction given by the court at appellee's request on the measure of damages was erroneous in ignoring the question of reduction of appellee's recovery by his own contributory negligence. The answer to that is that all of the other instructions given by the court made appellee's right to recover at all depend upon his freedom from contributory negligence, and the jury necessarily found that there was no contributory negligence. And this instruction which is complained of started out by telling the jury that "if they find for the plaintiff," which, of course, meant under the preceding instructions. There was no error, therefore, in failing to incorporate the question of reduction of the recovery by contributory

negligence, for the verdict of the jury must be treated as having settled that question against appellant.

It is contended finally that the verdict is excessive. The evidence shows that appellee lost his foot, and that he suffered extraordinary pain, and continues to suffer. The testimony also shows that appellee received injuries in his breast which continue to cause pain. The testimony of a physician establishes the fact that appellee's disability is greater than if his leg was amputated or that appellee could use a cork leg, for the stub of the foot where the amputation occurred will cause constant irritation. It seems from the testimony that the whole of the foot was not mashed off, and that part of it was left, but that the remaining part renders the condition worse than if the whole foot and ankle had been removed. In other words, the condition is such that the foot is useless and causes constant irritation and pain.

One of the physicians in testifying on the subject said: "The weight is thrown on the ankle joint and it is out of adjustment, being used to the whole foot springing, and that tenderness is caused by nature in trying to compensate for it. A foot in that condition would naturally give him pain. He could probably use it. He would have only partial use in time, but no power. He cannot use it now in the tender and inflamed condition it is in. He would never have complete use, on account of the stub; it will always be painful to him, and it would be a continuous source of trouble. I should think it would be better to take his foot off if this callous continues to grow from the bone. A cork leg would be much better and he could get around and get strong. As it is it is just a peg with a little flesh or meat on the end of it."

The verdict is not, we think, excessive.

Affirmed.