NORTHWEST ARKANSAS FARMERS' MUTUAL TORNADO INSURANCE COMPANY *v*. OSBORN.

Opinion delivered December 23, 1929.

*John Mayes,* for appellant.

*John Hale* and *John W. Nance,* for appellee.

BUTLER, J. The appellee brought suit against the appellant insurance company on a policy insuring his house in Washington County against destruction by tornado and lightning for the sum of $1,500, alleging that the house covered by the policy, while the same was in full force and effect, was on the............day of April, 1928, totally destroyed by a cyclone, and the contents of the building, including the papers, insurance policy and checks and receipts for payment of assessments. The appellant defended, denying that plaintiff ever insured his property with it, or that any policy was ever issued covering said property, or that plaintiff had ever paid any premiums or assessments to it. There was a trial, which resulted in a verdict and judgment for the appellee for the sum named in the policy, with interest.

Appellee testified that he procured a fire insurance policy, and at the time of the issuance of it requested tornado insurance. He was informed that the company could not at that time write such a policy, but that arrangements were being made by which tornado insurance could be issued, and that, later on, he was informed by the local agent, Mr. Rogers, who had received his application for fire insurance, that tornado insurance could then be written, and that he (appellee) went to the office of the agent, situated in the back part of a bank, where he made application for tornado insurance, paid the premium of $5.25, which included the local agent's fee of $1.50, and received in due time a policy in the appellant company, the same being the one sued on. He testified that his fire insurance policy was issued in 1924, and the tornado policy in 1925, and that it was in full force and effect at the time of the loss; that he had kept his policy in a box at the local bank, but, after the bank failed, he had taken his policy and other papers to his home, where they were at the time of the destruction of his house and property.

M. C. Rich testified that he visited the appellee during the year 1928, and, while discussing his own insurance, he examined the insurance policies of the appellee and found that he had two policies, one for fire insurance and the other for tornado insurance, and that the tornado insurance policy was written by the appellant company.

Mr. Rogers, the local agent, testified that he was the agent for the appellant company in 1924 and 1925; that Mr. Letch "was president of both concerns. Earl Weir was secretary of one, and Mr. Hartley was secretary of the other. The company was divided into two branches. They wrote two policies, one for fire and the other for tornado. The fire policy covered the county and the tornado policy covered five counties, as I understood it. I received my instructions from Mr. Letch, the president, and I wrote both fire and tornado." Witness further testified that he wrote a fire policy for the appellee, and that at the time tornado insurance was wanted, but witness told him that the "company did not write it, but would come out with it before a great while, and Mr. Letch had told me they were going to organize and take in a bigger territory, and would come out later, and it was a good bit later.". Witness stated that he had written a number of fire policies to persons who also wanted tornado insurance, and that, as soon as he could write the tornado insurance, he notified the policyholders to that effect, and a great many came in and brought their fire policies, from which he made application for tornado insurance upon which policies were later issued; that he sent some of the applications to Mr. Weir and some to Mr. Hartley and some to Mr. Letch; that Mr. Letch's office was at his house, and that he had no filing cabinets; "Just took care of them just like an ordinary home—just his tables and things like that." Witness could not remember whether he took appellee's application for tornado insurance or not, but stated "the next day after the tornado, people got to 'phoning just as soon as it was

over, you know, asking me if so and so had any policy, and they 'phoned me about Mr. Osborn's, and I couldn't remember, and then somebody 'phoned me and says, 'Dee says you wrote that in the back end of the bank,' and I says, 'Well, now, by the way, there is where I wrote them all, and undoubtedly I may have done it.' "

It appears from the testimony of the witnesses for the appellant that there were two insurance companies operating in Washington County, one known as the Washington County Mutual Fire Insurance Company and the other as the Northwest Arkansas Farmers' Mutual Tornado Insurance Company; that Mr. Letch was the president of both companies, and some of the officers are the same in each company, but they were separate organizations, kept separate funds, and one company was not liable for any loss occurring to the other. H. E. Hartley was the secretary of the appellee company, and had been since its organization. He testified that he had charge of the books of appellee company, and that no policy was ever issued, except application had been made, in which the description of the property was given; that his records disclosed that there had been 1,081 policies issued at the time of appellee's loss; that they were issued serially, without any break in the numbers from one to 1081, and none of these policies had been issued to the appellee, and all were in exact copies of the application; that if a policy was lost it would appear on the books of the company; that he would not issue a policy until he had first got the application. He further testified positively that he had not issued any policy to the appellee, but that he did not know whether the appellee was a policyholder or not until he consulted his records.

Mr. Weir testified that, as secretary of the company, he had issued to the appellee a fire insurance policy in April, 1924, and that the records of the appellee company, of which he was a director, did not show the issuance of any tornado policy to the appellee.

Mr. Seller testified that he was a director in both companies, and that he had examined the books of the appellee company, and Osborn's name did not appear therein.

After the verdict, and within apt time, the appellant filed its motion for a new trial, alleging, among other things, that after the trial it had discovered new evidence, which was vital and material, and which could not have been, with the exercise of diligence, discovered prior to the trial, and in support of this allegation filed the affidavit of John Mayes, in which the affiant in substance stated that he had read the motion for a new trial, had personal knowledge of the contents thereof, and "that said newly discovered evidence was not known to him, nor any member of the defendant company until after the trial of said cause; that said evidence could not have been discovered by the exercise of any degree of diligence prior to the trial of said cause; that same is vital and material, and would have changed the verdict of the jury if same had been introduced at said trial; that said facts were well known to the plaintiff prior to and on the date of said trial, and that he purposely concealed said facts in order to obtain a fraudulent judgment in this cause, and that such was the effect thereof; that the contents of the affidavit and motion for a new trial are true and correct to the best of my knowledge, information and belief." The affiant was the attorney of record for the defendant (appellant).

There was also filed the affidavit of F. S. Raedels, who stated that he was a local Red Cross director at Fayetteville, Arkansas, and "that he has personal knowledge of the fact that no relief is given to any storm sufferer if any tornado insurance is carried; that a representative of this relief unit made a personal and careful investigation of the loss sustained by Dee Osborn of Lincoln, Arkansas, growing out of the storm disaster which visited that locality; that the said Dee Osborn reported to him, and represented that he had no tornado

insurance on his property which had been blown away by said storm, and made said statement for the purpose of securing a donation from said relief unit; that, by reason of said statement that he carried no tornado insurance on his home or contents, he obtained funds from said unit sufficient to rebuild his home, together with other relief. He further states that it is the settled policy of said 'disaster unit' to pay no loss to any sufferer who carries insurance to cover the same, and that therefore, had Dee Osborn not made the representations that he did not carry any insurance, he could not have obtained the funds with which to build and furnish his home. He further states that the said Dee Osborn obtained judgment in the circuit court of Washington County for the sum of $1,500 by alleging and swearing that he did carry insurance in the Northwest Arkansas Farmers' Mutual Tornado Insurance Company, and that the loss for which said judgment was recovered was the same loss and on the same property the Red Cross aforesaid rebuilt and refurnished for him on his statement that he did not carry any tornado insurance upon the same.''

The court, after hearing the motion for a new trial, overruled the same, and on this appeal the appellant relies, as grounds for reversal, first, upon the fact that the verdict of the jury and the judgment of the court are not supported by any competent testimony; and second, that the court erred in not granting appellant a new trial on the ground of newly discovered evidence.

■ On the first ground the appellant relies on the rule announced in the case of *St. Louis Southwestern Ry. Co. v. Ellenwood,* 123 Ark. 428, 185 S. W. 768, where it is said: ''Appellate courts take notice of the unquestioned laws of nature, of mathematics, of mechanics and of physics; and where, by the application of such laws to the facts in evidence, it is demonstrated beyond controversy that the verdict is based upon what is untrue and what cannot be true, this court will declare as a matter of law that the testimony is not legally sufficient to war-

rant the verdict.'' The appellant argues that the application of this rule to the evidence introduced on behalf of the appellee will show that such testimony is impossible, and untrue. We do not think that any of the unquestioned laws of nature or of science are involved in the testimony in this case. There was a mere dispute as to whether or not the tornado policy had been issued. The appellee testified that such policy had been issued, and was corroborated by the testimony of other witnesses, while, on the other hand, the witnesses for the appellant testified with equal emphasis that the policy had not been issued, and they were corroborated by the books of the appellant company. This was a disputed question of fact which was dependent upon the memory and conduct of human beings, neither of which is infallible. The appellee might have been mistaken, or there might have been an error in the books of the appellant company. There were circumstances presented by the testimony to cast doubt upon the accuracy and credibility of appellee's testimony, but this was a matter solely within the province of the jury. They were the sole judges of the credibility of the witnesses and the weight to be given to their testimony, and, though this court might differ with the jury and trial court as to the correctness of the conclusions reached on issues of fact, it can only determine whether there be any substantial evidence to sustain the verdict. It was for the jury, and not for us, to weigh the evidence and determine the credibility of witnesses and to reconcile all real or apparent conflicts, and if there is substantial evidence to support the verdict, when viewed in the light most favorable to the appellee, and given its highest probative value with all inferences reasonably deducible therefrom, the verdict must stand. *St. Paul Fire & Marine Ins. Co.* v. *McElvaney,* 175 Ark. 1170, 300 S. W. 448; *Home Life & Accident Co.* v. *Scheuer,* 162 Ark. 600, 258 S. W. 648; *Standard Oil Co. of La.* v. *Hydrick,* 174 Ark. 813, 296 S. W. 708. Applying this rule to the evidence, viewed

in the light most favorable to the appellee, it is apparent that there was substantial evidence to sustain the verdict of the jury.

■ On the second ground for reversal, it may be said that courts are reluctant to grant a new trial on the ground of newly discovered evidence. A case where a showing made requires a new trial is unusual, and applications for a new trial for this cause are not favored, especially where the newly discovered evidence consists largely of conclusions and hearsay. 46 C. J. 216. This court early adopted the rule that the action of the trial judge in refusing to set aside a verdict on these grounds would not be disturbed unless there was a clear abuse of his discretion. In the case of *Olmstead* v. *Hill*, 2 Ark. 346, at page 352, the reason is given in the following language: "The reasons and principles upon which they rest are so obvious and conclusive that it seems almost impossible to overlook the essential requisites that the law requires to entitle a party to a new trial. He must have been guilty of no neglect or laches in preparing his case for trial. It must have been out of his power to procure the newly discovered evidence upon the former trial by due diligence and exertion to obtain it; and he must show to the court that the newly discovered evidence is material and important, by the affidavit of the witnesses, or by some other legal means; so that the court may judge of its materiality and sufficiency; and it must not be cumulative in its character and consequences. It is the duty of the parties to come prepared upon the principal points, and new trials would be endless if every additional circumstance bearing upon the facts in litigation were a cause for new trial."

In the case of *McFadden* v. *A. B. Richards Med. Co.*, 170 Ark. 1011, 282 S. W. 353, the court said: "The party asking a new trial for newly discovered evidence should not only state in his motion that he did not know of the existence of the testimony in time to produce it at the trial, but should also show facts from which it will

appear that he could not have ascertained or obtained such evidence by reasonable diligence.''

It will be noted in the affidavits introduced that much of the statements contained therein are mere conclusions. In the affidavit of S. F. Raedels the statement relative to Dee Osborn reporting and representing to the representative of the Red Cross that he had no tornado insurance on his property is clearly hearsay, and in neither of the affidavits nor in the motion itself is there a compliance with the rule requiring a statement of facts from which it would appear that the evidence could not have been obtained by reasonable diligence; nor was there any showing or allegation that the testimony of the representative of the Red Cross, to whom the alleged statement of Dee Osborn regarding his having no tornado insurance on his property, could have been obtained. ''It has been repeatedly held by this court that applications for a new trial upon the ground of newly discovered evidence are left largely within the discretion of the trial court. Unless such discretion has been manifestly abused, the appellate court will not disturb the action of the trial court.'' *McDonald* v. *Daniel,* 103 Ark. 593, 148 S. W. 271. We cannot say that the trial court abused its discretion in its refusal to grant a new trial in this case.

The judgment is therefore affirmed.