BLANTON *v.* MISSOURI PACIFIC RAILROAD COMPANY.

Opinion delivered October 27, 1930.

544

*McMillan & McMillan,* for appellant.

*R. E. Wiley* and *Henry Donham,* for appellee.

MEHAFFY, J. The appellants were partners and the owners of certain personal property which was stored in a barn they had leased from Mrs. Ed Anderson. The barn was located near the line of appellee's railroad track, about 150 yards south of the track. On December

6, 1918, the barn was destroyed by fire, and appellants' property which was in the barn was destroyed. The fire originated near the railroad track, and it was alleged that it was caused by the operation of appellee's trains or that it resulted from acts of employees of appellee. The value of the property destroyed was alleged to be $342.70. Suit was brought in the circuit court to recover this amount and also to recover $80 attorney's fee.

The fire was started sometime after 10 o'clock in the morning of December 6. Neither of appellants saw the fire or knew about the barn having burned until that night after the fire. They were shown, however, where the fire started, and the undisputed proof shows that it started on the north side of the railroad track. Three trains passed the place on December 6, between 8:30 and noon; all of them were oil burners.

George Osborne, who saw the fire, testified that he saw the barn three times the day it was burned, at 8:30 A. M., 10:30 A. M. and 12:30 P. M. That the barn was about 100 yards from appellee's railroad track; that he saw the fire burning on the east side of the railroad track opposite the barn at 10:30 A. M. At that time the fire had burned over about one acre; he testified that it originated on defendant's right-of-way, and that about half an hour after the train passed the fire was on the opposite side of the right-of-way from the barn, about 100 yards north of the barn. The fire at that time was spreading towards the south, due to a stiff wind. At 2:30 P. M. the same day, the witness saw the barn in flames. He saw a section crew working on the tracks at a point about a quarter of a mile south of the barn while the barn was burning. The section crew was burning ties in the vicinity that day. He said when he passed that place at 10:30 that the fire had originated and burned a spot of grass along the right-of-way on the opposite side of the track; the wind was high, and the fire had crossed the tracks and was burning rapidly. The wind was from the north blowing south and carrying the fire towards the barn. The

train this witness saw pass was a freight train. He said he took special notice that there were no hunters in the field that day. It was about 2:30 that day that witness saw the section crew burning ties about a quarter of a mile below the barn.

Finnis Osborne testified that he was at home that day; he lived between Mrs. Anderson's barn and Okolona, on the opposite side of the railroad track from the barn; his house is 200 or 300 yards from the railroad track on the north side of the track, and the barn is on the south side. He could see the barn burning from his house; saw fire burning down by the railroad track about 11 o'clock that morning, and heard a train pass before he saw the fire burning near the track. He said it might have been an hour after the train passed before he saw the fire. It was about half a mile from his house to the barn.

Appellee's witnesses testified that three trains passed between 8:30 A. M. and noon; the first two were freight trains and the next was a passenger, which passed Okolona at 11:52, going north. The next train that passed that way was in the afternoon at 2:50. All these trains would pass by the barn.

The engineer on the first freight train that passed said he passed the barn about 8:40; that his engine was an oil burner and in first class condition, and that there was no fire burning as he went by that morning; saw the fire in the evening as he came back. He testified that the burning of oil makes no sparks or cinders. He testified about the length of time he had run an engine and his familiarity with the oil-burning engine, and then was permitted to testify, over the objection of plaintiffs, that it was impossible for an oil-burning engine to throw out sparks, and that it was impossible for an oil-burning engine to put out fire as it was running along the road; that it was impossible for fire to get out as the engine was running along.

Another engineer testified to substantially the same facts and testified about it being impossible for an oil

burner to set out fire. This testimony was objected to by plaintiffs.

The engineer running the other train testified substantially to the same facts as the first two engineers.

The boilermaker testified about his experience in inspecting locomotives and was also permitted to testify, over objection of plaintiffs, that it was not possible for an oil burning engine to put out a fire between the tracks.

Plaintiffs' witnesses in rebuttal testified to having seen engines with oil burners set out fire near the track.

The jury returned a verdict for the defendant, and this appeal is prosecuted to reverse the judgment of the circuit court.

The appellants first insist that the case should be reversed because the court refused to give the following instruction: "The jury are instructed that if you believe from the evidence that the plaintiffs' property was destroyed by fire, and further find that the fire which destroyed the property was caused by fire from any locomotive, engine, machinery, train, car or other thing used upon said railroad or in the operation thereof or which resulted from or was caused by any employee, agent or servant of such defendant railroad company, while such agent or servant was in the discharge of his duty, then you should find for the plaintiff." The court modified the instruction requested by plaintiffs by striking out after the word car, "or other thing," and gave the instruction as modified. Appellants insist that they were entitled to the instruction as requested because the statute makes the companies liable for destruction of property which may be caused by fire or result from any locomotive, engine, machinery, train, car or other thing used, etc. It is insisted that the instruction as requested should be given because no evidence was offered by appellee tending to show that something other than one of these locomotives or trains or box-cars or caboose or the employees thereon, or the motor-car, or the employees thereon, caused this fire. In other words, it is insisted

that appellants were entitled to the instruction because there was no proof showing how the fire originated; no proof, no evidence, that the fire was set out by some agency other than those of the railroad company. If there had been any evidence tending to show that the fire was set out by other things used by the railroad, the instruction would have been proper, but there is no evidence in the record tending to show that the fire was set out by any other thing than those enumerated in the instruction. It is true that one of plaintiffs' witnesses testified that the section hands were burning ties about a quarter of a mile away, but he said this was at 2:30 in the afternoon, long after the fire had started, which burned the barn, and there is no evidence that any fire originated or spread from the burning of these ties. There was therefore no evidence upon which to base that part of the instruction which the court struck out. It is true that if the evidence had shown that the fire came from some other part of the train, whether from the locomotive, machinery, the train, the car or other thing used upon said railroad, then the defendant would be liable the same as if the fire had been caused by the locomotive. The burden of proof was upon the appellants to show that the fire was set out by the railroad company, or that it resulted from the locomotive, engine, machinery, train, car or other thing, etc., and they were not entitled to an instruction unless there was some evidence upon which to base it. There was no evidence that any other thing than those mentioned by the court in its instruction caused the fire, and the only testimony about other employees is that some section hands about a quarter of a mile away were burning ties, but it was not only a quarter of a mile away and after the fire had already started, but there is no evidence either direct or circumstantial that the fire was set out by burning the ties.

Appellants are not required to prove by direct evidence, but if the evidence either direct or circumstantial showed that the fire was set out as mentioned in instruction 1, the appellee would be liable.

It is next insisted that the court erred in refusing to give the following instruction: "If you find from the evidence that the fire which destroyed plaintiffs' property originated and spread from a fire which was discovered near defendant's railroad track shortly after a train had passed, and the proof does not establish some other origin of the fire, the presumption is justified that the fire originated from sparks from the engine of the train." The court modified this instruction to read as follows: "If you find from the evidence that the fire which destroyed plaintiff's property originated and spread from a fire which was discovered near defendant's railroad track shortly after a train had passed, this is a circumstance which may be considered by the jury in determining how the fire originated," and gave it as modified.

The instruction, as asked by appellants, was a peremptory instruction to find for appellants. It simply tells the jury that, if they believe from the evidence that the fire which destroyed plaintiffs' property originated and spread from a fire which was discovered near defendant's railroad track shortly after a train had passed and the proof does not establish some other origin of the fire, the presumption is justified that the fire originated from sparks from the engine of the train. The undisputed proof shows that the fire was discovered near the railroad track after a train had passed, and there is no proof to establish some other origin. The giving of the instruction as requested therefore would have told the jury in effect that they were justified in finding for the plaintiffs. When the evidence shows that a fire originated and spread near a railroad track after a train passed, and there is no evidence of any other origin of the fire, this court has said an inference is justified that the fire originated from sparks, etc., but this inference is to be drawn by the jury and not by the court. This court has frequently approved instructions which told the jury that, if they found from the evidence, either direct or circumstantial, that the railroad company set out the fire

and destroyed the property, the defendant would be liable. That means that if the evidence shows that a train passed shortly before a fire started up and there was no other origin of the fire shown in the evidence, this is a circumstance justifying the inference, but this inference must be drawn by the jury and not by the court. But, as this court has said, if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause, then the jury may infer that it originated from sparks or flames.

An instruction relating to negligence or acts for which a defendant would be liable should not be given where the evidence did not show that these acts caused the injury. "It may be first said that certain of these instructions should not have been given for the reason that the acts of negligence complained of were not the proximate or contributing causes of the injury. This is true of the allegations of negligence in regard to the blow-pipe and the oily condition of the floor. There is no testimony showing that these conditions, even though their existence constituted negligence, contributed to appellee's injury, and the instructions on those subjects were therefore abstract and erroneous." *Garrison Co. v. Lawson,* 171 Ark. 1122, 287 S. W. 396; *Texas Pipe Line Co.* v. *Johnson,* 169 Ark. 235, 275 S. W. 329; *Mo. Pac. Rd. Co.* v. *Parker,* 167 Ark. 42, 266 S. W. 959; *Lee County National Bank* v. *Hughes,* 165 Ark. 463, 265 S. W. 50; *Mo. Pac. Rd. Co.* v. *Brooks,* 165 Ark. 466, 265 S. W. 46.

The court was therefore correct in refusing to give instruction No. 2 as requested. Appellants objected to the giving of instruction No. 2 as modified by the court, but their objection was general, and no specific objection was pointed out. When the evidence established the fact that a train has passed and shortly thereafter a fire was discovered burning nearby, it is sufficient to justify a finding that the train put out the fire, but it does not justify the court in telling the jury that there is a presumption that it did. The jury are to find from the evidence direct

and circumstantial whether the railroad company set out the fire. In the instant case, the undisputed proof shows that the fire originated on the north side of the track. Appellants' witness Osborne saw the fire early, and he testified it was on the north side of the track. The undisputed evidence also shows that there was a stiff wind from the north. It is difficult to imagine how with a stiff wind from the north the fire from the engine or train would set out a fire on the north side of the track and burn an acre or more before it reached the track, and yet this is what the undisputed proof shows. Some of appellee's witnesses say that the fire originated in a field. However, Osborne, a witness for appellant, says it originated on the right-of-way north of the track.

Appellants next contend that the court erred in giving instructions 3, 6 and 7 requested by defendant because they claim that it confined the jury to the theory that the fire must have been set out by a locomotive. No. 3 was not objected to by the appellants. No. 6 was given over the general objection of appellants. It told the jury that it was not incumbent on the defendant to show how the fire originated, but that the burden was upon plaintiffs to show that the fire was caused by sparks, flames or cinders from one of defendant's locomotives, and that the plaintiffs must prove this by a fair preponderance of the evidence before they are entitled to recover, and, unless they had so proved this by competent testimony, the verdict should be for the defendant. In the first place, we think this included all of the things about which there was any testimony tending to show how the fire originated, and, during the progress of the trial, the court said: "Well, as I understand the issue, you are attempting by facts and circumstances to show that this fire was put out—the fire that burned that property, was put out by the operation of the defendant's railroad train." Plaintiff's attorney answered, "Yes, sir." It is true the defendant would be liable if it set out the fire whether it came from the locomotive or from

its caboose or from a burning hot-box or even if one of its employees should throw a lighted match or burning cigarette from the train. That the fire came from the caboose or a burning hot-box or from one of the employees throwing a lighted match or burning cigarette from the train is mere conjecture. There is no evidence tending to support this theory. But, if appellants had wanted these things stated in the instruction, it was their duty to call the court's attention to it and make specific objection to the instruction as given.

We do not think objection to No. 7 is well taken. Appellants say that it told the jury that the plaintiffs must produce some witness who saw sparks, flame, or cinders go from that locomotive into the grass or weeds and then saw a fire spring up from that, before they could find for the plaintiffs. This is not a proper interpretation of the instruction. They were told that the plaintiffs must establish by a preponderance of the evidence that the fire which damaged his property was caused or set out by the operation of one of defendant's trains; that does not mean by direct evidence, but if plaintiffs had shown by either direct or circumstantial evidence that the railroad company set out the fire, it would be liable, and the court would doubtless have given an instruction to this effect, if it had been requested to do so. The first instruction given at request of plaintiffs told the jury that, if they believed from the evidence that plaintiff's property was destroyed by fire, and if they further found that the fire which destroyed the property was caused by fire from any locomotive, engine, machinery, train or car used upon said railroad or in operation thereof or which resulted from or was caused by an employee, agent or servant of such defendant railroad company while such agent or servant was in the discharge of his duty, then they could find for the plaintiffs. The court also told the jury at the request of appellants that, if fire was discovered near defendant's railroad track shortly after a train had passed, this is a circumstance

which may be considered by the jury in determining how the fire originated. The instructions given by the court, when considered as a whole, correctly stated the law to the jury, and we do not think they could have been misled. They might have found a verdict either way.

It is next contended that the court erred in permitting defendant to introduce locomotive engineers and prove by them that the engine was in good working condition, an oil burner, and that it was impossible for the oil burner to set out a fire. The evidence of these witnesses was admissible, and the court admitted it, but at the time stated that it was all a question for the jury from the evidence. The court stated that the witnesses had qualified as experts, and it was a question for the jury as to whether or not their testimony was true. The appellants then put on witnesses to contradict them and showed by these witnesses that oil burners had set out fires. The opinions of expert witnesses are admitted in evidence for the sole purpose of aiding the court or jury to understand questions which inexperienced persons are not likely to decide correctly without such assistance. They are admissible when the witnesses have had special experience and from this experience can testify as to things which the ordinary witness would not know about. A witness may testify as an expert where experience and observation in the special calling of such witness gives him knowledge of the subject in question beyond that of persons of common knowledge. The expert witnesses in this case testified to having had long experience in the operation of engines with oil burners and had acquired knowledge which the ordinary person would not have, and we think their evidence was admissible, but the truth of what they said was to be determined by the jury. *Newport Mfg. Co.* v. *Alton,* 130 Ark. 542, 198 S. W. 120; *St. L. I. M. & S. R. Co.* v. *Dawson,* 77 Ark. 434, 92 S. W. 27; *K. C. Sou. Ry. Co.* v. *Henrie,* 87 Ark. 443, 112 S. W. 967.

The theory of appellants is that the fire was set out by the railroad company by the operation of its train,

and the evidence on their part is introduced to establish this fact. The theory of appellee is that the train did not set out the fire and undertook to show by expert evidence that a burner like the ones used on the trains passing that day could not set out the fire. These were questions for the jury to determine, and we think there was sufficient evidence to sustain the finding of the jury.

The judgment is affirmed.