MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, v. SIMS.

4-5174             120 S. W. 2d 1009.

Opinion delivered November 7, 1938.

*Thos. B. Pryor* and *Daggett & Daggett,* for appellant.
*James Robertson,* for appellee.

SMITH, J.   Appellee recovered judgment for $900, the value of his home in the city of Wynne, including damages to his household goods, as found by the verdict of the jury.   He sued upon the theory that one of appellant's engines pulling a freight train blew a spark, which fell upon and ignited the house.   This appeal presents only the question of fact whether the testimony is sufficient to support the finding that the fire originated from this cause.

The testimony tending to support that finding was to the following effect.   The house was on the north side of the railroad, and about one hundred feet from the right-of-way.   Appellee's wife got up about 5:30 one Sunday morning, and cooked the family breakfast and dinner at the same time.   There was no fire in the house after that time.   Appellee's wife attended church, and remained away from home until the afternoon.   Upon her return she served dinner, and while it was being eaten it was discovered that the house was afire.   The attempt to extinguish the fire was futile.

The building had a shingle roof, with roofing paper over the shingles, but the roofing paper was off the part of the roof that caught fire, leaving the shingles exposed.   The room on the roof of which the fire was discovered was a side room, in which there was no flue, and in which there had been no fire.   This room was the one nearest the railroad, and a strong wind was blowing from the direction of the railroad.   The engine which it is contended emitted the spark was pulling a heavy freight train, and was approaching Killough Hill, a steep grade, as it passed appellee's house.   The engineer testified that the engine was an oil- and not a coal-burner,

and, when asked if such an engine emitted sparks, answered: "It will, yes, at certain times. When you are standing around the station with your fire cut down low and to keep your engine from freezing, it will throw sparks out, caused by carbon accumulated from the firing pan. When you are working hard and carrying a heavy fire it won't do that." The engineer was also asked: "What is this about sanding the flue, does that emit sparks at those times?" He answered: "Hardly. If you are working an engine hard at the time." He was asked: "Suppose you are standing still and sand your flue?" He answered: "You don't sand it standing still. The draft is what does it. The draft through the fire box. And you sand your flues to cut the carbon out, and you only do that when you are working one hard." When asked, what was the life of one of these sparks, he answered: "I couldn't determine that to be exact because some of them will probably last longer than others. You understand that I never saw one yet that amounted to very much hardly and they hardly ever hit the ground alive."

On the other hand appellee testified that he "had seen oil-burning engines throw sparks plenty of times, especially when they sand the flues."

One McGinnis, employed by the Wynne Ice & Coal Company, the plant of which company is situated on the south side of the railroad, testified that he operated a stationary oil engine, and that such engines emit sparks, and that he had observed many oil-burning engines pass the plant where he worked, and that "lots of times, particularly an oil locomotive, will throw quite a lot of sparks or burned carbon."

In view of this testimony we are unable to say, as a physical or scientific fact, that an oil-burning engine would not emit a spark which might ignite a decayed shingle roof, such as the one which covered the room where the fire had its origin. No other cause of the fire is suggested.

Appellant cites *Blanton* v. *Missouri Pacific Railroad Co.*, 182 Ark. 543, 31 S. W. 2d 947, as the only case in our

reports involving the question of an oil-burning engine setting out a fire by the emission of sparks. We there affirmed the verdict of the jury finding that the engine had not caused the fire, but in so doing we said: "The theory of appellants (plaintiffs) is that the fire was set out by the railroad company by the operation of its train, and the evidence on their part is introduced to establish this fact. The theory of appellee is that the train did not set out the fire and undertook to show by expert evidence that a burner like the ones (oil) used on the trains passing that day could not set out the fire. These are questions for the jury to determine, and we think there was sufficient evidence to sustain the finding of the jury." A reading of the facts stated in that opinion will show the greater improbability there, than here, that a passing engine had set out the fire, as, for instance, the fact that the fire there started on the north side of the track, whereas the fire was spreading to the south, "due to a stiff wind," while here the wind was blowing towards appellee's house, and not from it. It was this and other testimony, recited in that opinion, which, as was there said, made a question for the jury.

In the case of *Standard Oil Co. of La.* v. *Hydrick*, 174 Ark. 813, 296 S. W. 708, we affirmed a judgment, based upon a verdict of the jury finding that a truck consuming, not crude oil, as does a locomotive engine, but gasoline, had emitted a spark. A headnote in that case reads as follows: "Whether a fire was caused by heated sparks of carbon from the exhaust of a truck, where the driver filling the tank in a barn spilled gasoline on shavings and ignited the car, allowing the motor to run, *held* under the evidence for the jury."

So, here, under the facts herein stated, we are constrained to hold that the question whether the engine blew out the spark which caused the fire was one of fact to be decided by the jury, and not by us.

The judgment must, therefore, be affirmed, and it is so ordered.